**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RUSSELL T. HAWLEY and HAWLEY
INSURANCE, INC.,

        Defendants.

No. C 06-4087-MWB

**MEMORANDUM OPINION AND
ORDER ENTERING SUMMARY
JUDGMENT *SUA SPONTE* ON
REMAINING CLAIMS AND
REAFFIRMING SUMMARY
JUDGMENT ON COUNT ONE**

———————————

**TABLE OF CONTENTS**

I.  **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.  Authority To Enter Summary Judgment* Sua Sponte . . . . . . . . . . . . . . 5
    *B.  The Remaining FCA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *1.  The* Allison Engine *decision* . . . . . . . . . . . . . . . . . . . . . . . 7
        *2.  The impact of* Allison Engine *in this case* . . . . . . . . . . . . . 12
            *a.    The § 3729(a)(2) claim* . . . . . . . . . . . . . . . . . . . . 12
            *b.    The § 3729(a)(3) claim* . . . . . . . . . . . . . . . . . . . . 15
    *C.  Reconsideration Of Summary Judgment On The First FCA Claim* . . . 16
        *1.  Authority to reconsider summary judgment* . . . . . . . . . . . . 17
        *2.  Grounds for reconsideration and analysis* . . . . . . . . . . . . . 18
    *D.  The Common-Law Fraud Claim* . . . . . . . . . . . . . . . . . . . . . . . . 19

III.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

T his civil action by the executive branch of the United States government (hereinafter "the government") pursuant to the False Claims Act and Iowa common law comes before the court *sua sponte* for entry of summary judgment on the government's remaining claims. A few days before trial, the court determined from its trial preparations that the government's remaining claims were not submissible. Therefore, the court canceled the trial and advised the parties that this more detailed ruling granting summary judgment would follow. This ruling also addresses the government's request, in its trial brief, for reconsideration of the court's previous grant of summary judgment in the defendants' favor on one of the government's FCA claims.

## I. INTRODUCTION

In this civil action by the government against defendants Russell T. Hawley and Hawley Insurance, Inc., (collectively "Hawley"), the government alleges that Hawley engaged in improper conduct that allowed ineligible farmers to obtain and make claims against multi-peril crop insurance (MPCI) policies that were sold by Hawley, issued by North Central Crop Insurance (NCCI), and reinsured by the Federal Crop Insurance Corporation (FCIC), for certain crop land in South Dakota. The factual background to this action is set forth in some detail in the court's April 3, 2008, ruling on the parties' cross-motions for summary judgment. *See United States v. Hawley*, 544 F. Supp. 2d 787, 791-94 (N.D. Iowa 2008) (*Hawley I*).

For present purposes, suffice it to say that the government alleges that Hawley knew that Ed Marshall owned the crop land in question, that Mark Hoffman had rented the land from Ed Marshall, and that Donald Kluver was actually farming the land in 2000.

Nevertheless, Hawley submitted to NCCI a crop insurance application for the 2000 crop year in the names of Sydney and Stanley Winquist for an interest in crops on the crop land. The Winquists later made claims against the MPCI policy on which the FCIC ultimately reimbursed NCCI for crop insurance indemnities and paid premium subsidies for the 2000 crop year totaling $145,540. The Winquists and Kluver were later prosecuted for conspiring to make fraudulent crop insurance claims relating to the crop land for crop year 2000. Kluver entered into a plea agreement and the Winquists entered into pretrial diversion agreements.

Similarly, the government alleges that, just before the application deadline for the 2001 crop year, Hawley submitted to NCCI an application for crop insurance for the crop land in the name of, and purportedly signed by, Ed Marshall. The application had been hand-delivered to Hawley by Mark Hoffman, so Hawley had not seen Marshall sign the application. The FCIC eventually made payments for indemnity payments for crop losses claimed by Marshall and paid premium subsidies on the crop land for the 2001 crop year totaling $159,960 . Ed Marshall signed a civil settlement agreement with the United States Attorney's Office for the Northern District of Iowa in which he admitted that he had not signed a timely application for crop insurance nor had he instructed anyone to sign such an application on his behalf and pursuant to which he repaid part of the overpayment alleged.

The government originally brought claims pursuant to 31 U.S.C. § 3729(a)(1), (a)(2), and (a)(3) of the False Claims Act (FCA), and common-law claims of fraud and payment under mistake of fact. However, the court granted summary judgment in favor of the defendants on **Count One**, the FCA claim pursuant to 31 U.S.C. § 3729(a)(1) alleging "presentation of a false claim," and as to **Count Five**, the common law claim for "payment under mistake of fact," but otherwise denied the defendants' motion for

summary judgment.  *See id.*  Therefore, this matter was scheduled for trial to begin on June 30, 2008, on the following claims:  **Count Two**, the "false record or statement" claim, in which the government asserts a claim pursuant to 31 U.S.C. § 3729(a)(2) of the FCA alleging that the defendants knowingly made, used, or caused to be made or used false records or statements in order to get false or fraudulent claims paid or approved by the United States; **Count Three**, the "conspiracy" claim, in which the government asserts a claim pursuant to 31 U.S.C. § 3729(a)(3) of the FCA alleging that the defendants conspired with others to get false or fraudulent claims allowed or paid by the United States in that the defendants entered into an agreement to submit and process false and fraudulent information in order for ineligible individuals to receive indemnities that would ultimately be reimbursed by the United States through the Federal Crop Insurance Corporation (FCIC); and **Count Four**, the "common-law fraud" claim, in which the government alleges that the defendants engaged in common-law fraud by making or using false records and statements or by concealing the true facts surrounding the individuals actually owning the farmland on which MPCI policies were issued and claims were made, knowing that the misrepresentations or concealments were material and knowing and intending that the United States would rely upon them, thereby causing the United States damages.

The court entered an extensive ruling on the parties' motions in limine on June 23, 2008.  *See United States v. Hawley*, No. C 06-4087-MWB (N.D. Iowa June 23, 2008) (slip op.) (*Hawley II*) (docket no. 47).  In a footnote in that decision, the court observed that the Supreme Court had recently issued a decision in *Allison Engine Co., Inc. v. United States ex rel. Sanders*, ___ U.S. ___, 2008 WL 2329722 (June 9, 2008) (*Allison Engine*), on FCA claims under all three subsections of § 3729(a), but that this court did not find that the Supreme Court's decision changed the disposition of the parties' cross-motions for summary judgment on the FCA claims in this case, although it might change particulars

of the jury instructions on and the requirements for proof of the remaining FCA claims in this case. *Hawley II*, slip op. at 4 n.1.

Notwithstanding that observation, in the course of preparation of jury instructions, after further review of the *Allison Engine* decision; review of Iowa law applicable to common-law fraud claims; review of the parties' trial briefs addressing, *inter alia*, the impact of the *Allison Engine* decision on this case; and review of the record, stipulations, and arguments previously submitted in support of the parties' cross-motions for summary judgment, the court came to the conclusion that the government's remaining claims in this case are not submissible. Therefore, by order (docket no. 50) dated June 25, 2008, the court canceled the trial set to begin on June 30, 2008, and advised the parties that this more detailed ruling granting summary judgment on all of the government's remaining claims would follow at the earliest opportunity. This ruling will also address the government's request, in its Trial Brief (docket no. 44), that the court reconsider its previous grant of summary judgment on the government's FCA claim pursuant to § 3729(a)(1) in **Count One**.

## II. LEGAL ANALYSIS

### A. Authority To Enter Summary Judgment Sua Sponte

The court must first address its authority to enter summary judgment *sua sponte*. As this court recently observed,

> "*Sua sponte* orders of summary judgment will be upheld 'only when the "party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted."'" *Figg v. Russell,* 433 F.3d 593, 597 (8th Cir. 2006) (quoting *Shur-Value Stamps, Inc. v. Phillips Petroleum Co.,* 50 F.3d 592, 595 (8th Cir. 1995), in turn quoting *Interco Inc. v. Nat'l*

> *Sur. Corp.,* 900 F.2d 1264, 1269 (8th Cir. 1990)); *Stone Motor Co. v. General Motors Corp.,* 400 F.3d 603, 607 (8th Cir. 2005) ("A district court may grant summary judgment sua sponte if 'the losing party was on notice that she had to come forward with all of her evidence.'") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Hubbard v. Parker,* 994 F.2d 529, 531 (8th Cir. 1993). Although the court may grant summary judgment *sua sponte,* it is improper for a court to do so where the issue on which summary judgment is granted was not properly raised or discussed in the parties' arguments concerning summary judgment, unless the court's ruling on issues properly raised forecloses as a matter of law the claim on which the court wishes to grant summary judgment *sua sponte. See Heisler v. Metropolitan Council,* 339 F.3d 622, 631-32 (8th Cir. 2003).

*Myers v. Tursso Co., Inc.*, 496 F. Supp. 2d 986, 992 (N.D. Iowa 2007).

In this case, the parties were aware of the impending decision of the Supreme Court in *Allison Engine* at the time of their cross-motions for summary judgment, and after that decision was handed down, they specifically addressed its impact in their trial briefs. Therefore, the court concludes that the government has had sufficient advance notice of the potential impact of the *Allison Engine* decision on the FCA claims in this case and has had an adequate opportunity to demonstrate why summary judgment should not be granted on the basis of that decision. *Myers*, 496 F. Supp. 2d at 992. Moreover, the court concludes that the decision in *Allison Engine*, in conjunction with the court's disposition of issues and findings from the record on summary judgment foreclose, as a matter of law, the government's remaining claims. *Id.* Therefore, the court concludes that summary judgment may be entered *sua sponte* in this case.

Moreover, the court concludes that it is appropriate to do so as to the remaining claims in this case. The court will begin its explanation of that conclusion with the

remaining FCA claims pursuant to §§ 3729(a)(2) and (a)(3), then turn to the government's request that the court reconsider its grant of summary judgment to the defendants on the government's FCA claim pursuant to § 3729(a)(1) and, finally, the court will also explain its reasons for granting summary judgment *sua sponte* on the government's remaining common-law fraud claim.

### B. The Remaining FCA Claims

The viability of the government's remaining FCA claims turns on the impact of the Supreme Court's June 9, 2008, decision in *Allison Engine*, ___ U.S. at ___, 2008 WL 2329722. Therefore, the court begins its analysis of the remaining FCA claims with a review of the *Allison Engine* decision.

### 1. The Allison Engine *decision*

In *Allison Engine*, the Supreme Court "granted review . . . to decide what a plaintiff asserting a claim under [§ 3729(a)(2) or (a)(3) of the FCA] must show regarding the relationship between the making of a 'false record or statement' and the payment or approval of 'a false or fraudulent claim . . . by the Government.'" *Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *3. The Court summarized its holding on this question as follows:

> Contrary to the decision of the Court of Appeals below, we hold that it is insufficient for a plaintiff asserting a § 3729(a)(2) claim to show merely that "[t]he false statement's use . . . result[ed] in obtaining or getting payment or approval of the claim," 471 F.3d 610, 621 (C.A.6 2006) or that "government money was used to pay the false or fraudulent claim," *id.*, at 622. Instead, a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim. Similarly, a

7

> plaintiff asserting a claim under § 3729(a)(3) must show that
> the conspirators agreed to make use of the false record or
> statement to achieve this end.

*Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *2.

In reaching this decision, the Court first examined the plain language of § 3729(a)(2), which the Court noted "imposes civil liability on any person who 'knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." *Id.* at ___, 2008 WL 2329722 at *5 (quoting § 3729(a)(2)). The Court found that the interpretation adopted by the Sixth Circuit Court of Appeals below, and endorsed by the government, "impermissibly deviates from the statute's language":

> In the view of the Court of Appeals, it is sufficient for a
> § 3729(a)(2) plaintiff to show that a false statement resulted in
> the use of Government funds to pay a false or fraudulent
> claim. 471 F.3d, at 621-622. Under subsection (a)(2),
> however, the defendant must make the false record or
> statement "to get" a false or fraudulent claim "paid or
> approved by the Government." "To get" denotes purpose, and
> thus a person must have the purpose of getting a false or
> fraudulent claim "paid or approved by the Government" in
> order to be liable under § 3729(a)(2). Additionally, getting a
> false or fraudulent claim "paid . . . by the Government" is not
> the same as getting a false or fraudulent claim paid using
> "government funds." *Id.*, at 622. Under § 3729(a)(2), a
> defendant must intend that the Government itself pay the
> claim.
>
> Eliminating this element of intent, as the Court of
> Appeals did, would expand the FCA well beyond its intended
> role of combating "fraud against the *Government*." See
> *Rainwater v. United States,* 356 U.S. 590, 592, 78 S. Ct. 946,
> 2 L. Ed. 2d 996 (1958) (emphasis added). As the District of
> Columbia Circuit pointed out, the reach of § 3729(a)(2) would

> then be "almost boundless: for example, liability could attach
> for any false claim made to any college or university, so long
> as the institution has received some federal grants—as most of
> them do." *[United States ex rel.] Totten [v. Bombardier
> Corp.*, 380 F.3d 488,] 496 [(D.C. Cir. 19 2004), *cert. denied*,
> 544 U.S. 1032 (2005)].

*Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *5.

In so holding, the Court rejected the government's contention that "paid by the Government" does not mean that the government must literally pay the bill, finding such a construction to be based on colloquial usage, not the precision that is important and expected in a statute. *Id.* The Court also rejected the government's contention that its construction conflicted with the definition of "claim" in § 3729(c), because that definition cannot alter the meaning of the phrase "by the Government" in § 3729(a)(2), explaining, "Under § 3729(c)'s definition of 'claim,' a request or demand may constitute a 'claim' even if the request is not made directly to the Government, but under § 3729(a)(2) it is still necessary for the defendant to intend that a claim be 'paid . . . by the Government' and not by another entity." *Id.* at ___, 2008 WL 2329722 at *6. In a footnote, the Court also explained that the portion of § 3729(c) providing that a "claim" may be made to a contractor, grantee, or other recipient of government funding was not rendered superfluous by its interpretation of § 3729(a)(2):

> This language [in § 3729(c)] makes it clear that there can be
> liability under §§ 3729(a)(1) and (2) where the request or
> demand for money or property that a defendant presents to a
> federal officer for payment or approval, § 3729(a)(1), or that
> a defendant intends "to get . . . paid or approved by the
> Government", § 3729(a)(2), may be a request or demand that
> was originally "made to" a contractor, grantee, or other
> recipient of federal funds *and then forwarded to the
> Government*.

*Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *6 n.1 (emphasis added). The Court also rejected the contention that its interpretation of § 3729(a)(2) somehow required proof that the defendant's claim was submitted to the government, noting the difference in language between § 3729(a)(1), which contains a "presentment" requirement, and § 3729(a)(2), which does not. *Id.*

The Court ultimately explained what must be proved to win a § 3729(a)(2) claim, as follows:

> What § 3729(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government." Therefore, a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim. If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government." In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability. Recognizing a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute. Our reading of § 3729(a)(2), based on the language of the statute, gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that "a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 470, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) (internal quotation marks omitted).

*Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *6 (footnote omitted).  The Court then rejected the contention that its construction of § 3729(a)(2) conflicted with the definition of "knowing" and "knowingly" in § 3729(b), which states, *inter alia*, that "no proof of specific intent to defraud is required":

> The statutory definition of these terms is easily reconcilable with our holding in this case for two reasons.  First, the intent requirement we discern in § 3729(a)(2) derives not from the term "knowingly," but rather from the infinitive phrase "to get."  Second, § 3729(b) refers to specific intent with regard to the truth or falsity of the "information," while our holding refers to a defendant's purpose in making or using a false record or statement.

*Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *6 n.1.

The Court next applied similar reasoning to its construction of what must be proved to establish a "conspiracy" claim pursuant to § 3729(a)(3):

> Respondents also brought suit under § 3729(a)(3), which makes liable any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid."  Our interpretation of this language is similar to our interpretation of the language of § 3729(a)(2).  Under § 3729(a)(3), it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government.  Instead, it must be shown that the conspirators intended "to defraud the Government."  Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim.  It is not necessary to show that the conspirators intended the false record or statement to be presented directly

> to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim.
>
> . . . . [T]he interpretation urged on us by respondents would in effect substitute "paid or approved by the Government" for the phrase "paid by Government funds." Had Congress intended subsection (a)(3) to apply to anyone who conspired to defraud a recipient of Government funds, it would have so provided.

*Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *7.

### 2.    The impact of Allison Engine in this case

In this case, as in *Allison Engine*, the government's remaining FCA claims are a "false record or statement" claim pursuant to § 3729(a)(2) and a "conspiracy" claim pursuant to § 3729(a)(3).   The court finds that *Allison Engine* forecloses both of the government's remaining FCA claims in this case.

### a.    The § 3729(a)(2) claim

The government's "false record or statement" claim pursuant to § 3729(a)(2), in **Count Two** in this case, alleges that the defendants knowingly made, used, or caused to be made or used false records or statements in order to get false or fraudulent claims paid or approved by the United States.   The claim is premised on allegations that Hawley made or used, or caused to be made or used, one or more false MPCI crop insurance applications or false acreage reports in crop year 2000 for Stanley and Sydney Winquist

and in crop year 2001 for Edward Marshall.[1]  The court concludes that this claim is not submissible in light of *Allison Engine*.

First, contrary to the government's contentions in its Trial Brief (docket no. 44), at 8, "intent" *is* a specific element of a § 3729(a)(2) claim. *See Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *5 ("Under § 3729(a)(2), a defendant must intend that the Government itself pay the claim.").  More specifically, the government must prove that "the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'"  *Id.* at *6.

Second, contrary to the government's contentions, *see* Plaintiff's Trial Brief at 9, this *is* a case in which government funds were "merely used" to pay false claims in support of which Hawley had allegedly made or used false records or statements, so that the necessary intent cannot be shown.  As the government concedes, the allegedly false records and statements were never submitted to the government, but only to NCCI; the crop insurance claims were only submitted to and paid by NCCI, not the government; and the government only reimbursed NCCI pursuant to the Standard Reinsurance Agreement for claims that NCCI had paid, the government did not pay any claims itself.  *See* Government's Trial Brief (docket no. 44) at 2-3 ("I.  Undisputed Facts"); Final Pretrial

---

[1] The government's proposed jury instructions indicate that the government is still also relying on allegedly false statements in notices of loss and production worksheets. *See, e.g.,* Joint Proposed Jury Instructions (docket no. 43), Plaintiff's Proposed Final Jury Instruction No. 7.  However, in its ruling on the parties' cross-motions for summary judgment, this court ruled that the insurance applications and acreage reports are the only documents related to the crop insurance claims for which the government has generated a genuine issue of material fact that Hawley signed, submitted, or participated in submitting, and that these were the only documents on which there was a jury question as to whether Hawley "made" or "used" them or "caused" them to be made or used. *Hawley I*, 544 F. Supp. 2d at 809 (slip op. at 34-35).

Order (docket no. 48), 2-3 ("I. Stipulation Of Facts"). To put it another way, the allegedly false crop insurance claims themselves were never forwarded to or approved by the government, nor was the payment of the crop insurance claims conditioned on review or approval by the government, and there is no showing that the defendant intended that the false records or statements would be material to the government's decision to pay or approve the false claim. Thus, the evidence that the government ultimately reimbursed NCCI for the false claims that NCCI paid is not sufficient to make out a submissible claim pursuant to § 3729(a)(2). *See Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *2 ("[A] plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim."); *see also id.* at *6 ("[U]nder § 3729(a)(2) it is still necessary for the defendant to intend that a claim be 'paid . . . by the Government' and not by another entity."); *id.* ("If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim 'by the Government.'"); *id.* at *6 n.1 (liability under § 3729(a)(2) will lie where "a request or demand . . . was originally 'made to' a contractor, grantee, or other recipient of federal funds *and then forwarded to the Government*") (emphasis added). On the government's evidence in this case, "the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability." *Id.* at *6.

Therefore, the court now grants summary judgment in favor of Hawley on the government's "false record or statement" claim pursuant to § 3729(a)(2) in **Count Two**.

### b.    The § 3729(a)(3) claim

The government's "conspiracy" claim pursuant to § 3729(a)(3), in **Count Three** in this case, alleges that the defendants conspired with others to get false or fraudulent claims allowed or paid by the United States in that the defendants entered into an agreement to submit and process false and fraudulent information in order for ineligible individuals to receive indemnities that would ultimately be reimbursed by the United States through the Federal Crop Insurance Corporation (FCIC).    Thus, this claim is premised on an agreement to engage in the same conduct that the government alleges was actually committed in **Count Two**.    The court concludes that this claim also is not submissible in light of *Allison Engine*.

The government's evidence shows, at most, that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity, NCCI, to make payments using money obtained from the government or, even more indirectly, to make payments for which NCCI was subsequently reimbursed by the government.    Under *Allison Engine*, that evidence is not enough.    *See Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *7 ("Under § 3729(a)(3), it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government.").    Instead, the government must show that the conspirators intended "to defraud the Government."    *Id.* Where, as here, the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, the government must show that the conspirators had the purpose of "getting" the false record or statement to bring about the government's payment of a false or fraudulent claim.    *Id.*    Although it is not necessary for the government to show that the conspirators intended that the false record or statement would be presented directly to the government, it is still necessary for the government to establish

that the conspirators agreed that the false record or statement would have a material effect on the government's decision to pay the false or fraudulent claim. *Id.* Where, as here, the private insurer, NCCI, made the decision to pay the false or fraudulent claim, the allegedly false crop insurance claims themselves were never forwarded to or approved by the government, nor was the payment of the crop insurance claims conditioned on review or approval by the government, and there is no showing that the defendants intended that the false records or statements would be material to the government's decision to pay or approve the false claim, the government's "conspiracy" claim pursuant to § 3729(a)(3) is insufficient as a matter of law.

Therefore, the court now grants summary judgment in favor of Hawley on the government's "conspiracy" claim pursuant to § 3729(a)(3) in **Count Three**.

### C. Reconsideration Of Summary Judgment On The First FCA Claim

In its ruling on the parties' cross-motions for summary judgment, this court, *inter alia*, granted summary judgment in Hawley's favor on the government's FCA claim pursuant to 31 U.S.C. § 3729(a)(1) in **Count One**, which alleged that the defendants knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval. *See Hawley I*, 544 F. Supp. 2d at 801-06. This court ruled that the government has alleged, and its evidence tends to prove, only that Hawley "presented" or "caused to be presented" false claims to NCCI, which were paid by NCCI, then NCCI was reimbursed by the FCIC, the government instrumentality, and that, under *Totten United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 363 U.S.App. D.C. 180 (D.C. Cir. 2004), and the decision of the Sixth Circuit Court of Appeals in *Allison Engine*, *United States ex rel. Sanders v. Allison Engine Co., Inc.*, 471 F.3d 610 (6th Cir. 2006), that is not enough to sustain a claim under § 3729(a)(1), as a matter of

law. *Hawley I*, 544 F. Supp. 2d at 806. In its Trial Brief at 12-14, the government asks the court to reconsider its grant of summary judgment on this claim.

### 1. *Authority to reconsider summary judgment*

This court has previously found that Rule 54(b) of the Federal Rules of Civil Procedure provides authority for a court to reconsider any interlocutory order, including a prior ruling on a motion for summary judgment. *Kirt v. Fashion Bug #3252, Inc.*, 495 F. Supp. 2d 957, 964 (N.D. Iowa 2007); *Doctor John's, Inc. v. City of Sioux City, Iowa,* 467 F. Supp. 2d 925, 931 (N.D. Iowa 2006); *Wells' Dairy, Inc. v. Travelers Indemnity Company of Illinois,* 336 F. Supp. 2d 906, 909 (N.D. Iowa 2004) (citing cases). Specifically, Rule 54(b) provides that, unless the court certifies the order for interlocutory appeal, "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision *is subject to revision at any time before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b) (emphasis added). Moreover, this court has repeatedly held that it has the inherent power to reconsider and revise any interlocutory order, such as a summary judgment ruling, up until the time that a final judgment is entered. *Kirt*, 495 F. Supp. 2d at 964; *Wells' Dairy, Inc.,* 336 F. Supp. 2d at 909 (citing *Kaydon Acquisition Corp. v. Custum Mfg., Inc.,* 317 F. Supp. 2d 896, 903 (N.D. Iowa 2004); *Helm Financial Corp. v. Iowa N. Ry. Co.,* 214 F. Supp. 2d 934, 999 (N.D. Iowa 2002); and *Longstreth v. Copple,* 189 F.R.D. 401, 403 (N.D. Iowa 1999)). Therefore, this court has authority to entertain the government's request for reconsideration of the court's grant of summary judgment in Hawley's favor on the government's FCA claim pursuant to § 3729(a)(1) in **Count One**.

## 2.    *Grounds for reconsideration and analysis*

In support of its request for reconsideration of summary judgment on its FCA claim pursuant to § 3729(a)(1), the government contends that, as a matter of law, the defendants' submissions to NCCI were submissions to the government, because NCCI was an agent of the government for purposes of the crop insurance program. The court is not persuaded that its previous grant of summary judgment on this claim should be set aside.

As this court observed the first time around, in *Totten,* in a decision by then Judge Roberts, now Chief Justice Roberts of the United States Supreme Court, the District of Columbia Circuit Court of Appeals considered a case in which the allegedly false claims were presented to Amtrak, not to the government. *Totten,* 380 F.3d at 491. The court held that, because Amtrak was not an agency or instrumentality of the government, presenting a claim to Amtrak was *not* presenting a claim to an officer or employee of the government within the meaning of § 3729(a)(1). *Id.* at 492. The court noted that the plain meaning of § 3729(a)(1) requires that the claim be "presented" to an officer or employee of the United States, not merely to a grantee of government funds and that this plain meaning controls over a different legislative intent purportedly demonstrated by legislative history. *Id.* 493-96. Thus, according to *Totten*, "presenting" a false claim to a grantee of government funds is not "presenting" a false claim to an officer or employee of the government.

The government's renewed argument fails under the plain meaning of § 3729(a)(1), as explained in *Totten* and now the Supreme Court's decision in *Allison Engine*. The statute requires that a false claim be presented to "an officer or employee of the United States Government." 31 U.S.C. § 3729(a)(1). It does not expressly include presentation of a claim to a purported agent of a government corporation or a contractor, grantee, or other recipient of federal funds, even if § 3729(c), defining a "claim," does identify such

entities as ones to whom a "claim" can be made.  *See Totten*, 380 F.3d at 493-96 (the plain meaning of § 3729(a)(1) requires that the claim be "presented" to an officer or employee of the United States, not merely to a grantee of government funds); *see also Allison Engine*, ___ U.S. at ___, 2008 WL 2329722 at *6 ("'[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002), with internal quotation marks omitted).  Again, in this case, the government has alleged, and its evidence tends to prove, only that Hawley "presented" or "caused to be presented" false claims to NCCI, which were paid by NCCI, then NCCI was reimbursed by the FCIC, the government instrumentality.  Under *Totten*, that is not enough to sustain a claim under § 3729(a)(1).  Even assuming, as the government argues, that there was no private alternative to MPCI policies, that does not mean, as the government argues, that the only end result possible was presentment to and payments by the government.  There simply never was a presentment in this case "to an officer or employee of the United States Government" within the meaning of § 3729(a)(1), even if the only end result possible was that NCCI's payment of the claim would ultimately be reimbursed from government funds.

Therefore, notwithstanding the government's request for reconsideration, the court's grant of summary judgment in favor of Hawley on the government's FCA claim pursuant to § 3729(a)(1) in **Count One** shall stand.

### D.  The Common-Law Fraud Claim

The government's last remaining claim is a common-law "fraud" claim in **Count Four** alleging that the defendants made or used false records and statements or concealed the true facts surrounding the individuals actually owning the farmland on which MPCI

policies were issued and claims were made, knowing that the misrepresentations or concealments were material and knowing and intending that the United States would rely upon them, thereby causing the United States damages. Although *Allison Engine* did not address a common-law fraud claim, like the one still at issue in **Count Four** in this case, the court nevertheless concludes that such a claim is not submissible as a matter of law in this case, for essentially the same reasons that the FCA claims are not submissible. In so concluding, the court expressly reconsiders the portion of its ruling on the parties' cross-motions for summary judgment addressing the common-law fraud claim and now reaches a different conclusion.[2]

> As this court explained in its ruling on the cross-motions for summary judgment,

>> [T]he elements of a fraud claim for damages under Iowa law [are the following]:
>>> (1) a representation by the opposing party, (2) falsity of the representation, (3) scienter (*i.e.*, knowledge of falsity), (4) intent to deceive, (5) materiality of the misrepresentation, and (6) justifiable reliance by the

---

[2]The court set forth its authority to reconsider a prior summary judgment ruling above, in Section II.C.1., beginning on page 17. The court notes that, in its Trial Brief (docket no. 40), 7-8, Hawley argues that the common-law fraud claim fails as a matter of law on the ground that the government cannot show reliance, thereby implicitly requesting reconsideration of the court's disposition of this issue in its ruling on the cross-motions for summary judgment. Moreover, to the extent that the court is granting summary judgment on this claim *sua sponte*, rather than as a matter of reconsideration, the court concludes that the government has had sufficient advance notice of Hawley's attack on its showing of reliance and has had an adequate opportunity to demonstrate why summary judgment should not be granted on that basis from the cross-motions for summary judgment. *Myers*, 496 F. Supp. 2d at 992. Moreover, the court concludes that Iowa law forecloses the government's common-law fraud claim as a matter of law in light of the record on summary judgment and the present stipulations of fact. *Id.* Therefore, the court concludes that summary judgment may be entered *sua sponte* on this claim, as well.

> claimant upon the representation, resulting in injury to
> the claimant.
>
> *McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*, 469 F.
> Supp. 2d 677, 705 (N.D. Iowa 2007) (citing *Smidt v. Porter*,
> 695 N.W.2d 9, 22 (Iowa 2005)). This court has also
> recognized that, in the case of an alleged fraudulent non-
> disclosure or concealment, the first element is that the
> defendant made a false representation or concealed a material
> fact when under a legal duty to disclose that fact. *Id.* at 707.

*Hawley I*, 544 F. Supp. 2d at 812 (slip op. at 40). In its ruling on the cross-motions for

summary judgment, this court, *inter alia*, rejected Hawley's contention that the

government could not prove "justifiable reliance," where statements or records on which

the government's fraud claim is based were only submitted to NCCI, not the government.

*Id.* at 814. The court now reconsiders that conclusion.

In the pertinent part of its ruling on the cross-motions for summary judgment, this

court noted that, in *Clark v. McDaniel*, 546 N.W.2d 590 (Iowa 1996), the Iowa Supreme

Court had held that no direct contractual relationship is required between the alleged

tortfeasor and the person who purportedly relied to his or her detriment on the alleged

tortfeasor's representations, because a person who fraudulently misrepresents the truth can

be held liable to third parties if the alleged tortfeasor had a "reason to expect" that its

misrepresentations would be communicated to third parties. *Id.* (citing *Clark*, 546 N.W.2d

at 593, in turn citing RESTATEMENT (SECOND) OF TORTS § 533 (1977)). This court then

reasoned as follows:

> In the present case, there are at least genuine issues of
> material fact that Hawley made misrepresentations, or failed
> to disclose misrepresentations, in the various documents it
> signed and submitted in support of crop insurance applications
> or claims; that those misrepresentations, although not made
> directly to the government, were made to NCCI; that Hawley

intended or had reason to expect that the misrepresentations would be repeated or their substance communicated to the government; and that those misrepresentations would influence the government to reimburse NCCI for indemnity payments and to pay crop insurance premium subsidies. RESTATEMENT (SECOND) OF TORTS § 533; *Clark,* 546 N.W.2d at 593. The record shows that Hawley knew, from his prior employment as an adjuster for NCCI and from his role as a crop insurance agent, that the government subsidized crop insurance indemnity payments and premiums based on information provided to the private insurer. These are circumstances in which there are at least genuine issues of material fact that the maker of the misrepresentation or concealer of the falsity of the misrepresentations, Hawley, had information that would lead a reasonable man to conclude that there was an especial likelihood that the false documents would reach the government, even though the government was a third party to the crop insurance contracts, and that the false documents would influence the government to reimburse indemnity payments and pay premium subsidies. *See Clark,* 546 N.W.2d at 593 (quoting with favor this standard from RESTATEMENT (SECOND) OF TORTS § 531 cmt. d). Therefore, Hawley is not entitled to summary judgment on the government's common law fraud claim on the ground that the government cannot show justifiable reliance upon misrepresentations purportedly made only to NCCI.

*Hawley I*, 544 F. Supp. 2d at 815 (slip op. at 45-46).

The court now repudiates at least part of that analysis. Upon reconsideration of the record, it is apparent that the government cannot show that Hawley intended or had reason to expect that the alleged misrepresentations or non-disclosures would be repeated or their substance communicated to the government, or that those misrepresentations or non-disclosures would influence the government to reimburse NCCI for indemnity payments and to pay crop insurance premium subsidies. *Contra id.* Once again, the record shows

that the private insurer, NCCI, made the decision to pay the false or fraudulent claim; the allegedly false crop insurance claims themselves were never forwarded to or approved by the government; the payment of the crop insurance claims was not conditioned on review or approval by the government; and there is no showing that the defendants intended that the false records or statements would be material to the government's decision to pay or approve the false claim. In short, the record shows beyond dispute that the alleged misrepresentations and non-disclosures were never communicated to the third party now asserting that it was defrauded by those misrepresentations or non-disclosures, so that party could not have relied upon them, justifiably or otherwise. *Compare Clark*, 546 N.W.2d at 593 (a person who fraudulently misrepresents the truth can be held liable to third parties if they have a "reason to expect" that their misrepresentations will be communicated to third parties) (citing RESTATEMENT (SECOND) OF TORTS § 533 (1977)).

Moreover, while the government probably could prove that Hawley intended to deceive NCCI, it cannot show that Hawley intended to deceive the government. *See Hawley I*, 544 F. Supp. 2d at 812 (fraud requires proof of intent to deceive the claimant, as well as the claimant's justifiable reliance). This is so, because, as the government concedes, the allegedly false records and statements were never submitted to the government, but only to NCCI; the crop insurance claims were only submitted to and paid by NCCI, not the government; the government only reimbursed NCCI pursuant to the Standard Reinsurance Agreement for claims that NCCI had paid, the government did not pay any claims itself; the allegedly false crop insurance claims themselves were never forwarded to or approved by the government; and the payment of the crop insurance claims was not conditioned on review or approval by the government, such that there is no showing that the allegedly false records and statements might have been material to the government's decision to pay or approve the false claim.

Therefore, the court now grants summary judgment in favor of Hawley on the government's common-law "fraud" claim in **Count Four.**

### III. *CONCLUSION*

Upon review of the Supreme Court's recent decision in *Allison Engine*; review of the parties' trial briefs addressing, *inter alia*, the impact of the *Allison Engine* decision on this case; review of the *Allison Engine* decision; review of Iowa law applicable to common-law fraud claims; and review of the record, stipulations, and arguments previously submitted in support of the parties' cross-motions for summary judgment, the court finds that the government's remaining claims pursuant §§ 3729(a)(2) and (a)(3) of the FCA and Iowa common law, in **Counts Two, Three**, and **Four**, respectively, are not submissible as a matter of law. Review of the same materials also leads the court to reject the government's request, in its Trial Brief, that the court reconsider its previous grant of summary judgment in the defendants' favor on the FCA claim pursuant to § 3729(a)(1) in **Count One**.

THEREFORE, the court **grants summary judgment** *sua sponte* in favor of the defendants on the government's remaining claims in **Counts Two, Three,** and **Four**. Notwithstanding the government's request for reconsideration, the court also **reaffirms** its grant of summary judgment in favor of the defendants on the government's claim in **Count One.**

There being no remaining claims, judgment shall now enter in favor of the defendants on all claims.

**IT IS SO ORDERED.**

**DATED** this 27th day of June, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA