**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RUSSELL T. HAWLEY and HAWLEY
INSURANCE, INC.,

        Defendant.

No. C 06-4087-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.*  *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.*  *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.*  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A.*  *Standards for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . 9
    *B.*  *Amendments to the False Claims Act* . . . . . . . . . . . . . . . . . . . . 11
    *C.*  **Ex Post Facto** *Clause under the United States Constitution* . . . . . . . . 16
    *D.*  *Due Process under the United States Constitution* . . . . . . . . . . . . . . 22

*III.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I. INTRODUCTION

This civil action is before me on a Motion For Partial Summary Judgment filed on the part of defendants Russell T. Hawley and Hawley Insurance, Inc. (collectively the "defendants" or "Hawley"). Hawley alleges that amendments to the False Claims Act ("FCA"), 31 U.S.C. § 3729, as set forth in the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 4(f)(1), 123 Stat. 1617, 1625 (2009), do not apply to the present matter and, thus, he is entitled to judgment as a matter of law. Hawley further argues that even if the amendments do apply, such retroactive application would violate the *Ex Post Facto* clause and Hawley's right to Due Process under the United States Constitution. I have reviewed Hawley's motion in detail, and find the motion to be fully submitted and ripe for decision.

## A. Factual Background

Plaintiff United States of America ("the government"), alleges that Hawley engaged in improper conduct that allowed ineligible farmers to obtain and make claims against multi-peril crop insurance ("MPCI") policies that were sold by Hawley, issued by North Central Crop Insurance ("NCCI"), and reinsured by the Federal Crop Insurance Corporation ("FCIC"), for certain crop land in South Dakota. In my earlier Memorandum Opinion And Order Entering Summary Judgment *Sua Sponte* On Remaining Claims And Reaffirming Summary Judgment On Count One (docket no. 51), I made the following findings of fact:

> The factual background to this action is set forth in some detail in the court's April 3, 2008, ruling on the parties' crossmotions for summary judgment. *See United States v. Hawley*, 544 F. Supp. 2d 787, 791-94 (N.D. Iowa 2008) (Hawley I).

For present purposes, suffice it to say that the government alleges that Hawley knew that Ed Marshall owned the crop land in question, that Mark Hoffman had rented the land from Ed Marshall, and that Donald Kluver was actually farming the land in 2000.

Nevertheless, Hawley submitted to NCCI a crop insurance application for the 2000 crop year in the names of Sydney and Stanley Winquist for an interest in crops on the crop land. The Winquists later made claims against the MPCI policy on which the FCIC ultimately reimbursed NCCI for crop insurance indemnities and paid premium subsidies for the 2000 crop year totaling $145,540. The Winquists and Kluver were later prosecuted for conspiring to make fraudulent crop insurance claims relating to the crop land for crop year 2000. Kluver entered into a plea agreement and the Winquists entered into pretrial diversion agreements.

Similarly, the government alleges that, just before the application deadline for the 2001 crop year, Hawley submitted to NCCI an application for crop insurance for the crop land in the name of, and purportedly signed by, Ed Marshall. The application had been hand-delivered to Hawley by Mark Hoffman, so Hawley had not seen Marshall sign the application. The FCIC eventually made payments for indemnity payments for crop losses claimed by Marshall and paid premium subsidies on the crop land for the 2001 crop year totaling $159,960. Ed Marshall signed a civil settlement agreement with the United States Attorney's Office for the Northern District of Iowa in which he admitted that he had not signed a timely application for crop insurance nor had he instructed anyone to sign such an application on his behalf and pursuant to which he repaid part of the overpayment alleged.

(docket no. 51, pp. 2-3)

### B. Procedural Background

I will, once again, quote from my prior Memorandum Opinion And Order Entering Summary Judgment *Sua Sponte* On Remaining Claims And Reaffirming Summary Judgment On Count One (docket no. 51), to illustrate the applicable procedural history.

> The government originally brought claims pursuant to 31 U.S.C. § 3729(a)(1), (a)(2), and (a)(3) of the False Claims Act (FCA), and common-law claims of fraud and payment under mistake of fact. However, the court granted summary judgment in favor of the defendants on **Count One**, the FCA claim pursuant to 31 U.S.C. § 3729(a)(1) alleging "presentation of a false claim," and as to **Count Five**, the common law claim for "payment under mistake of fact," but otherwise denied the defendants' motion for summary judgment. *See id.* Therefore, this matter was scheduled for trial to begin on June 30, 2008, on the following claims: **Count Two**, the "false record or statement" claim, in which the government asserts a claim pursuant to 31 U.S.C. § 3729(a)(2) of the FCA alleging that the defendants knowingly made, used, or caused to be made or used false records or statements in order to get false or fraudulent claims paid or approved by the United States; **Count Three**, the "conspiracy" claim, in which the government asserts a claim pursuant to 31 U.S.C. § 3729(a)(3) of the FCA alleging that the defendants conspired with others to get false or fraudulent claims allowed or paid by the United States in that the defendants entered into an agreement to submit and process false and fraudulent information in order for ineligible individuals to receive indemnities that would ultimately be reimbursed by the United States through the Federal Crop Insurance Corporation (FCIC); and **Count Four**, the "common-law fraud" claim, in which the government alleges that the defendants engaged in common-law fraud by making or using false records and statements or by concealing the true facts surrounding the individuals actually owning the farmland on which MPCI policies were issued and claims were made, knowing that the

misrepresentations or concealments were material and knowing and intending that the United States would rely upon them, thereby causing the United States damages.

The court entered an extensive ruling on the parties' motions in limine on June 23, 2008. *See United States v. Hawley,* No. C 06-4087-MWB (N.D. Iowa June 23, 2008) (slip op.) (Hawley II) (docket no. 47). In a footnote in that decision, the court observed that the Supreme Court had recently issued a decision in *Allison Engine Co., Inc. v. United States ex rel. Sanders*, ___ U.S. ___, 2008 WL 2329722 (June 9, 2008) (Allison Engine), on FCA claims under all three subsections of § 3729(a), but that this court did not find that the Supreme Court's decision changed the disposition of the parties' cross-motions for summary judgment on the FCA claims in this case, although it might change particulars of the jury instructions on and the requirements for proof of the remaining FCA claims in this case. *Hawley II*, slip op. at 4 n.1.

Notwithstanding that observation, in the course of preparation of jury instructions, after further review of the *Allison Engine* decision; review of Iowa law applicable to common-law fraud claims; review of the parties' trial briefs addressing, inter alia, the impact of the *Allison Engine* decision on this case; and review of the record, stipulations, and arguments previously submitted in support of the parties' cross-motions for summary judgment, the court came to the conclusion that the government's remaining claims in this case are not submissible. Therefore, by order (docket no. 50) dated June 25, 2008, the court canceled the trial set to begin on June 30, 2008, and advised the parties that this more detailed ruling granting summary judgment on all of the government's remaining claims would follow at the earliest opportunity.

(docket no. 51, pp. 3-5)

On June 27, 2008, I filed a Memorandum Opinion And Order Entering Summary Judgment *Sua Sponte* On Remaining Claims And Reaffirming Summary Judgment On

Count One. *See* docket no. 51. In this decision, I held that *Allison Engine Co., Inc. v. United States ex rel. Sanders,* 553 U.S. 662, 662 (2008), foreclosed the government's "false record or statement" claim pursuant to § 3729(a)(2) in **Count Two**, and their "conspiracy" claim pursuant to § 3729(a)(3) in **Count Three**. With regard to **Count Two**, I found that the government failed to prove intent, a key requirement under *Allison Engine,* 553 U.S. at 671-672. The government must prove that "the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'" *Allison Engine*, 553 U.S. at 671 ("Under § 3729(a)(2), a defendant must intend that the Government itself pay the claim."). I also found that the alleged false crop insurance claims were never forwarded to or approved by the government, nor was the payment of the crop insurance claims conditioned on review or approval by the government. Thus, the government failed to show Hawley had intended that the false records or statements would be material to the government's decision to pay or approve the false claim. For those reasons, I granted summary judgment in favor of Hawley on the government's "false claim or statement" claim pursuant to § 3729(a)(2) in **Count Two**.

In **Count Three**, the "conspiracy" claim pursuant to § 3729(a)(3), the government's evidence had established Hawley agreed upon a fraud scheme that caused a private entity, NCCI, to make payments using money obtained from, or reimbursed by, the government. However, under *Allison Engine,* 553 U.S. at 672, I held such evidence was insufficient, because the government must show that the Hawley intended "to defraud the Government." *Id.* ("[I]t is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government. Instead, it must be shown that the conspirators intended 'to defraud the Government.'"). Thus, I granted summary judgment

6

in favor of Hawley on the government's "conspiracy" claim pursuant to § 3729(a)(3) in **Count Three**.

Finally, with regard to the government's last remaining claim, the common-law "fraud" claim in **Count Four**, I concluded that it also failed as a matter of law for the same reasons I found the FCA claims inadmissible. After reconsidering the record, I determined that Hawley only submitted false records and statements to NCCI, never directly to the government. Thus, although the government could prove that Hawley intended to deceive NCCI, it could not demonstrate that Hawley intended to deceive the government. As a result, I granted summary judgment in favor of Hawley on the government's remaining claim in **Count Four**, and the case was dismissed on June 30, 2008. *See* docket no. 52.

On August 25, 2008, the plaintiff filed a Notice Of Appeal to the United States Court of Appeals for the Eighth Circuit, from my Memorandum Opinion And Order Entering Summary Judgment *Sua Sponte* On Remaining Claims And Reaffirming Summary Judgment On Count One, as well as the Judgment dismissing the case. *See* docket no. 53. On August 23, 2010, the United States Court of Appeals for the Eighth Circuit issued an opinion, finding the record created genuine issues of material fact with regard to **Counts Two, Three**, and **Four**, as to "whether Hawley had reason to expect that the representations set forth in false insurance applications and acreage reports that he signed and submitted would reach the FCIC and influence the FCIC's decision to reimburse NCCI." (docket no. 59, p. 16) The Eighth Circuit Court of Appeals noted that Hawley had extensive experience as a federal crop insurance adjuster and sales agent, thus, because of such experience, a jury could find that Hawley had reason to expect that fraudulent representations would be passed on to the FCIC by NCCI. Judgment was entered on August 23, 2010, reversing my earlier decision granting summary judgment on Hawley's

remaining counts.  On December 8, 2010, in my Order Setting Trial, Final Pretrial Conference, And Requirements For Final Pretrial Order, the new trial date was scheduled to commence on September 19, 2011.

On May 27, 2011, Hawley filed a Motion For Partial Summary Judgment.  In his motion, Hawley argues that the amendments to the FCA, as set forth in FERA, do not apply retroactively to the present matter because § 3729(a)(1)(B) only applies to claims for payment made to the government pending on June 7, 2008.  Hawley points out that the government never alleged Hawley made a "claim," or demand for payment from the FCIC, pending as of June 7, 2008.  Therefore, Hawley argues, I should hold that the prior version of the FCA applies.  Hawley also alleges that any retroactive application would violate the *Ex Post Facto* clause of the United States Constitution, "because it would punish Hawley for conduct which was not proscribed at the time that it was allegedly committed." (docket no. 88, p. 2)  Finally, Hawley argues that retroactive application would violate his right to Due Process under the United States Constitution.  Thus, for all these reasons, Hawley argues the pre-FERA version of the FCA should be applied to the present matter and he should be entitled to partial summary judgment as a matter of law.

On June 20, 2011, the government filed a Brief In Resistance To Defendants' Motion For Partial Summary Judgment.  In its Brief, the government argues the newly codified 31 U.S.C. § 3729(a)(1)(B) applies because the United States filed its claims under the FCA against Hawley prior to June 7, 2008.  Furthermore, the government alleges that the *Ex Post Facto* clause of the United States Constitution does not apply in this case because it only applies in the criminal context, and this matter is clearly civil in light of Congressional intent and terms of the statute.  The government also alleges that application of the new § 3729(a)(1)(B) in this case would not violate Hawley's right to Due Process, because it serves Congress's legitimate objective of recovering funds stolen by fraud.

On June 27, 2011, Hawley filed a Reply Brief In Support Of Their Motion For Partial Summary Judgment. In their Reply, Hawley disputes the government's notion that "claims" under the FCA mean an actual lawsuit. Hawley responds that such a proposition is not supported by any authority, and, conversely, a majority of courts have concluded otherwise. Hawley also maintains that retroactive application of the FERA amendments violates the *Ex Post Facto* clause because the FCA is punitive in nature, as evidenced by a seven factor test passed by the United States Supreme Court. Hawley lastly argues there is no rational legislative purpose that would justify depriving him of Due Process under the United States Constitution, therefore, the pre-FERA version of the FCA should apply to the present matter.

I find the parties' arguments have been thoroughly submitted, and I turn next to an analysis of the legal issues presented.

## II.  LEGAL ANALYSIS

### A.  Standards for Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing

the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of

specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U. S. 574, 586-87 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587.

*Torgerson v. City of Rochester*, ___ F.3d ___, ___, 2011 WL 2135636, at *7 (June 1, 2011) (*en banc*).

### B. Amendments to the False Claims Act

In response to *Allison Engine*, 553 U.S. 662 (2008), Congress amended the FCA through passage of FERA on May 20, 2009. The amendment currently at issue between the parties involves § 3729(a)(1)(B), which states:

SEC. 4. CLARIFICATIONS TO THE FALSE CLAIMS ACT
TO REFLECT THE ORIGINAL INTENT OF THE LAW.

11

(a) CLARIFICATION OF THE FALSE CLAIMS ACT.--Section 3729 of title 31, United States Code, is amended--

(1) by striking subsection (a) and inserting the following:

> (a) LIABILITY FOR CERTAIN ACTS.--
>
> (1) IN GENERAL.--Subject to paragraph (2), any person who--
>
> > . . . .
> >
> > (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
> >
> > . . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

Pub. L. No. 111-21, § 4(a), 123 Stat. 1617, 1625 (2009).

Hawley argues amendment § 3729(a)(1)(B) should not apply retroactively to the present matter because it is only germane to "claims," or demands for money from the government, pending on June 7, 2008. Hawley points out that his demands to the NCCI for payment occurred in 2000 and 2001, thus, expiring well before the June 7, 2008 deadline. In support of his argument, Hawley calls attention to the effective date and definition sections of the FCA, as amended by FERA. The effective date of § 3729(a)(1)(B), states as follows:

> (f) EFFECTIVE DATE AND APPLICATION.--The amendments made by this section shall take effect on the date

of enactment of this Act and shall apply to conduct on or after the date of enactment, except that--

> (1) subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, *and apply to all claims under the False Claims Act* (31 U.S.C. 3729 et seq.) that are pending on or after that date. . . .

Pub. L. No. 111-21, § 4(f), 123 Stat. 1617, 1625 (2009) (emphasis added). FERA defines a "claim" under 31 U.S.C. § 3729, as:

> (2) the term 'claim'--
>> (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--
>>> (i) is presented to an officer, employee, or agent of the United States; or
>>> (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government– (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and
>> (B) does not include requests or demands for money or property that the Government has paid

13

> to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property. . . .

Pub. L. No. 111-21, § 2(b), 123 Stat. 1617, 1622 (2009). Thus, Hawley contends that amended § 3729(a)(1)(B) is inapplicable, because the amendment's definition of a "claim" does not encompass a "lawsuit," and his "claims" to the NCCI expired well before the June 7, 2008, deadline.

On the other hand, the government argues that Hawley's interpretation of the effective date, "makes no sense because it would apply to *no* actual cases, given that claims for payment are not made *under* the False Claims Act." (docket no. 93, pp. 10-11) The government further argues that while the new definition of a "claim" applies to revised § 3729, it should not apply to the effective date provision, which is not part of 31 U.S.C. § 3729, or of the FCA at all. Thus, the government contends § 3729(a)(1)(B) of the FCA, as amended by FERA, applies retroactively in the present matter because the definition of a "claim" can be interpreted to include a "legal case" brought under the FSA.

The Eighth Circuit Court of Appeals has yet to resolve the question whether the definition of a "claim" includes a "legal case" under the FCA. I have reviewed the examples submitted by the government involving cases from other circuits. While instructive, none are determinative. On the contrary, I note an analogous case before another district court in the Eighth Circuit, *United States ex rel. Burroughs v. Central Ark. Development Council*, 2010 WL 1542532 (E.D. Ark. 2010). In that opinion, the court recognized that,

[i]n § 4(f)(1) of FERA, Congress provided that the amendments "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act that are pending on or after that date." 123 Stat. at 1625. "A 'claim' is defined in the amendments to the FCA set forth in the FERA as 'any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property....' 31 U.S.C. § 3729(b)(2)(A). Neither the amendments to the FCA set forth in the FERA nor the prior FCA include a definition of 'case.' Thus, a plain reading of the retroactivity language reveals that the relevant change is applicable to 'claims' and not to 'cases.'" *U.S. ex rel. Sanders v. Allison Engine Co., Inc.*, 667 F.Supp.2d 747, 752, 2009 WL 3626773, 4 (S.D. Ohio 2009). *Accord Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009) ("We interpret the word 'claim' in section 4(f) to mean 'any request or demand. . . for money or property,' as defined by 31 U.S.C. § 3729(b)(2)(A) (as amended May 2009)."); *U.S. v. Science Applications Int'l Corp.*, 653 F.Supp.2d 87 (D.D.C. 2009) ("Under 31 U.S.C. § 3729, a 'claim' is a 'request or demand … for money or property.'. . . FERA's legislative history supports applying the statutory definition of 'claim' when interpreting the reach of FERA section 4(f)(1)"); *U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 2010 WL 146877 (M.D.Ga. Jan. 11, 2010); *U.S. ex rel. Putnam v. Eastern Idaho Regional Medical Center*, 2010 WL 910751, 4 (D.Idaho March 10, 2010) ("[B]ecause the claims for Medicaid reimbursement at issue in this case were neither pending on nor filed after June 7, 2008, the pre-FERA version of § 3729(a)(2) governs the United States' cause of action under that subsection."); *Mason v. Medline Ind., Inc.*, 2010 WL 653542 (N.D.Ill. Feb. 18, 2010); *U.S. v. Chubb Institute*, 2010 WL 1076228 (D.N.J. March 22, 2010).

*Burroughs*, 2010 WL 1542532 at *2.

I concur with the court's assessment in *Burroughs*, and find that under a plain reading of the statute, I must conclude that the relevant amendment is applicable to "claims," or a demand for money, and not to "legal cases." As a result, I find that Hawley did not have a "claim," or a demand for money to the NCCI, pending on or after June 7, 2008. Thus, the applicable FERA amendments to the FCA are not retroactive and the original version of the FCA shall apply. In this matter, Hawley is entitled to summary judgment as a matter of law.

### C. Ex Post Facto *Clause under the United States Constitution*

Hawley argues that retroactive application of the FERA amendments to the FCA would result in violation of the *Ex Post Facto* clause of the United States Constitution. While recognizing the FCA is a civil statute, nevertheless, Hawley contends that the FCA is meant to be punitive in nature. The government responds that the *Ex Post Facto* clause is inapplicable in the present case, because "Congress' intent in enacting the [FCA] was to create a civil scheme to compensate the United States for false or fraudulent claims against it," and in light of the seven factor test dictated by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), the FCA's "real-world effects match that purpose." (docket no. 93, p. 19)

The United States Constitution mandates in Article I, that "[n]o Bill of Attainder or Ex Post Facto law shall be passed." U.S. CONST., art. I, § 9. "An Ex Post Facto law is one which renders an act punishable in a manner in which it was not punishable when it was committed." *Fletcher v. Peck*, 10 U.S. 87, 139 (1810). As the Eighth Circuit Court of Appeals has explained,

> The Ex Post Facto clause prohibits "enacting laws that increase punishment for criminal acts after they have been committed." *Doe v. Miller*, 405 F.3d 700, 718 (8th Cir. 2005). It applies only in the criminal context. *See*, e.g., *E.*

> *Enters. v. Apfel*, 524 U.S. 498, 538, 118 S.Ct. 2131, 141
> L.Ed.2d 451 (1998) ("Since *Calder v. Bull*, 3 Dall. 386, 1
> L.Ed. 648 (1798), this Court has considered the Ex Post Facto
> Clause to apply only in the criminal context.") (Thomas, J.,
> concurring).

*Lundeen v. Canadian Pacific R. Co.*, 532 F.3d 682, 691 (8th Cir. 2008). Thus, I must first set out to determine whether Congress intended the FCA to be either a civil or criminal statute. *See United States v. Ward*, 448 U.S. 242, 248 (1980) (the court must "set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."); *see also One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 236-237 (1972); *U.S. v. May*, 535 F.3d 912, 919 (8th Cir. Iowa 2008) ("In analyzing an Ex Post Facto violation, courts must first determine whether 'the legislature meant the statute to establish "civil" proceedings.'" (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997))).

Secondly, even if I determine Congress intended the FCA to establish civil proceedings, the United States Supreme Court requires me to inquire further "whether the statutory scheme [is] so punitive either in purpose or effect as to negate that intention." *Ward*, 448 U.S. at 248-249; *see also Flemming v. Nestor*, 363 U.S. 603, 617-621 (1960). The United States Supreme Court has noted that, "[i]n regard to this latter inquiry, . . . 'only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground.'" *Ward*, 448 U.S. at 249 (quoting *Flemming*, 363 U.S. at 617; *see also One Lot Emerald Cut Stones*, 409 U.S. at 237; *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 (1956).

In relation to the first part of the analysis, namely, whether Congress intended the FCA to be either a civil or criminal statute, it is readily apparent from the text of the

statute, amendments, and Senate reports, that Congress intended FCA proceedings to create a civil mechanism to address fraudulent claims. For example, the FCA is codified under a civil title of the United States Code. The FERA amendments also state that a FCA violator "is liable to the United States Government for a civil penalty. . . ." Pub. L. No. 111-21, § 4(a), 123 Stat. 1617, 1625 (2009). Congress mandates that actions brought under the FCA be initiated as "required by the Federal Rules of Civil Procedure. . . ." 31 U.S.C.A. § 3732(a). Congress further required the standard-of-proof customary in civil litigation: "by a preponderance of the evidence." 31 U.S.C. § 3731(d). All of this evidence points to the FCA as being civil in intent.

Further evidence of Congressional intent in drafting the FCA is found in reports from the Senate Committee on the Judiciary, commenting on the passage of the FCA Amendment Act of 1986 out of committee. The Senate Committee on the Judiciary specifically noted in its report that the "preponderance" standard is the "[t]raditional[] . . . burden in a *civil* action." S. REP. NO. 99-345, at 1 (1986) (emphasis added). The Senate report added, that "False Claims Act proceedings are civil and remedial in nature and are brought to recover compensatory damages. . . ." *Id.*

In spite of obvious Congressional intent to draft the FCA as a civil statute, as illustrated by the language of the statute and applicable committee reports, it is apparent, as pointed out by Hawley, that some individual members of Congress viewed the purpose of the FCA as punishing and preventing fraud. However, the United States Supreme Court has found "traditionally more authoritative indicators of legislative intent" include the language of the statute and conference or committee reports. *Northeast Bancorp, Inc. v. Board of Governors of Federal Reserve System*, 472 U.S. 159, 170 (1985). Furthermore, the Court has also "recognized that all civil penalties have some deterrent effect." *Hudson v. United States*, 522 U.S. 93, 102 (1997); *see Department of Revenue of Mont. v. Kurth*

*Ranch*, 511 U.S. 767, 777 (1994); *United States v. Ursery*, 518 U.S. 267, 284-285, n. 2 (1996). Thus, I find that it is clear Congress intended the FCA to be a civil statute.

With regard to the second portion of the analysis, I must examine "whether the statutory scheme is so punitive either in purpose or effect as to negate [Congress'] intention to deem it civil." *May*, 535 F.3d at 919-920 (quoting *Smith v. Doe*, 538 U.S. 84, 89-90 (2003) (internal citation and quotation marks omitted)). In this analysis, I recognize that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.'" *Lundeen*, 532 F.3d at 691(quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003) (internal citations and quotations omitted).

The United States Supreme Court has provided a seven factor test to help determine whether the FCA is so punitive in nature as to transform it into a criminal penalty, despite legislative intent. Such factors include:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). These *Kennedy* factors are "useful guideposts" *Hudson*, 522 U.S. at 99, building a "framework" that is "neither exhaustive nor dispositive." *Ward*, 448 U.S. at 249; *Smith*, 538 U.S. at 97; *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365 (1984). Notably, in relation to the FCA, the *Kennedy* factors have already been analyzed in detail. *See United States ex rel.*

*Sanders v. Allison Engine Co., Inc.*, 667 F.Supp.2d 747, 752 (S.D.Ohio 2009) (concluding four of the seven *Kennedy* factors weigh in favor of finding clear proof the civil FCA sanctions are punitive in nature and effect); *United States ex rel. Baker v. Community Health Systems, Inc.*, 709 F.Supp.2d 1084, 1112 (D.N.M. 2010) (agreeing with the court's analysis in *Allison Engine Co., Inc.*, 667 F.Supp.2d at 752, and finding a possible fifth *Kennedy* factor weighing in favor of finding the FCA punitive in nature). I similarly concur with, and herein adopt, the *Kennedy* analysis conducted by the district court in *Allison Engine*, 667 F.Supp.2d at 752.[1] Significantly, the United States Supreme Court has recognized that the treble damages found in the FCA are "essentially punitive in nature." *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 405 (2003); *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 784-85 (2000); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 550 (1943). Numerous courts in various jurisdictions have also found evidence suggesting that the FCA is, intuitively, punitive in

---

[1] The government relies on *Hudson v. United States*, 522 U.S. 93, 494-496 (1997); *United States v. Rogan*, 517 F.3d 449, 454 (7th Cir. 2008); and, *United States ex rel. Miller v. Bill Harbert Int'l. Constr., Inc.* 608 F.3d 871 (D.C. Cir. 2010), as evidence that the United States Supreme Court currently views FCA damages as civil rather than criminal in nature. Contrary to the government's assertions, *Hudson* overruled *United States v. Halper*, 490 U.S. 435, 448 (1989), because it disavowed the method of analysis utilized, specifically, "elevat[ing] a single *Kennedy* factor [in the double jeopardy analysis] — whether the sanction appeared relation to its nonpunitive purposes — to dispositive status." *Hudson*, 522 U.S. at 101. The Court emphasized that "no one factor should be considered controlling as they 'may often point in differing directions.'" *Id.* (quoting *Kennedy*, 372 U.S. at 169). The Court ultimately held that the analysis applied by the *Halper* Court was "ill considered" and "proved unworkable," because it deviated from longstanding double jeopardy principles. *Hudson*, 522 at 494. Thus, *Hudson* responded to the question asking whether FCA penalties are punishment for double jeopardy purposes, not whether FCA damages are civil in nature for purposes of *Ex Post Facto* analysis.

nature. *See i.e. United States ex rel. A+ Homecare, Inc. v. Medshares Management Group, Inc.*, 400 F.3d 428, 445 (6th Cir. 2005), *cert. denied*, 546 U.S. 1063 (2005); *United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 641(6th Cir. 2002), *cert. denied*, 539 U.S. 969 (2003); *United States v. Bank of Farmington*, 166 F.3d 853, 857 (7th Cir. 1999); *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008); *United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006); *United States v. Killough*, 848 F.2d 1523, 1533 (11th Cir. 1988); *United States ex rel. Pogue v. Diabetes Treatment Centers of America*, 474 F.Supp.2d 75, 87 (D.D.C. 2007); *U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc.*, 2007 WL 4885468, *7 (M.D.Fla. Nov. 30, 2007); *United States ex rel. Brinlee v. AECOM Government Services, Inc.*, 2007 WL 496623, *4 (W.D.La. Feb. 8, 2007); *United States ex rel. Oliver v. The Parsons Corp.*, 498 F.Supp.2d 1260, 1289 n. 30 (C.D.Cal. 2006).

Thus, I find by the "clearest proof" standard in *Ward*, the FCA's statutory scheme is so punitive either in purpose or effect as to negate Congressional intent to deem it civil. *Id.* at 249. As a result, "retroactive application of the [FERA] amendments to the FCA violates the Ex Post Facto Clause because retroactive application of the amendments to the FCA would impose punishment for acts that were not punishable prior to enactment of the amendments." *Allison Engine*, 667 F.Supp.2d at 752.[2]

---

[2] In Defendants' Reply Brief In Support Of Their Motion For Partial Summary Judgment (docket no. 96), Hawley moves to strike as being non-responsive paragraphs 3-5 of Plaintiff's Response To Defendants' Statement Of Material Facts (docket no. 93-1), or alternatively, deem the paragraphs admitted. Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Under Rule 7(a) of the Federal

(continued...)

### D. Due Process under the United States Constitution

Hawley argues that retroactive application of FERA would violate his right to Due Process under the United States Constitution, thus, the pre-FERA version of the FCA is applicable to the present matter. *See* U.S. CONST. amend. V. The government disputes this contention, alleging that Due Process requirements are satisfied "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984). The government argues that retroactive application of the FERA amendments serves the legitimate legislative purpose of "recovering funds lost to fraud and abuse." S. REP. NO. 111-10, at 9 (2009). I have already determined that the original version of the FCA shall apply in this case. The FERA amendments to the FCA are not applicable, and would further violate the *Ex Post Facto* clause if applied retroactively. Thus, I find it unnecessary to reach a conclusion on the parties' Due Process arguments.

---

[2](...continued)
Rules of Civil Procedure, "pleadings" are: "a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and, if the court orders one, a reply to an answer." *Id.* Here, Hawley is not seeking to strike matter from a pleading, but, instead, attempts to strike statements of material fact offered in opposition to his Motion For Partial Summary Judgment. As a result, Hawley's motion to strike is improper under Rule 12(f) of the Federal Rules of Civil Procedure, and, consequently, denied.

### *III. CONCLUSION*

Therefore, Hawley's Motion For Partial Summary Judgment is granted, as follows:

1. The Motion For Partial Summary Judgment is **granted** as to Hawley's claim that the FERA amendments to the FCA do not apply, because Hawley did not have a "claim," or a demand for money to the NCCI pending on or after June 7, 2008.

2. The Motion For Partial Summary Judgment is **granted** as to Hawley's claim that retroactive application of the FERA amendments to the FCA would result in violation of the *Ex Post Facto* clause of the United States Constitution, because the FCA's statutory scheme is punitive in nature, and, thus, retroactive application of the amendments to the FCA would impose punishment for acts that were not punishable prior to enactment of the amendments.

**IT IS SO ORDERED.**

**DATED** this 1st day of August, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA