**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

RUSSELL T. HAWLEY and HAWLEY
INSURANCE, INC.,

      Defendants.

No. C 06-4087-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION IN LIMINE
AND PLAINTIFF'S MOTION IN
LIMINE TO RECONSIDER THE
ADMISSIBILITY OF EVIDENCE OF
DONALD KLUVER'S PLEA
AGREEMENT**

**TO BE FILED UNDER SEAL**

————————————

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II.* **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   *A. Hawley's Second Motion In Limine* . . . . . . . . . . . . . . . . . . 12
      *1. Timothy Eischeid's testimony* . . . . . . . . . . . . . . . . . . . . . 12
      *2. Statements of Donald Kluver* . . . . . . . . . . . . . . . . . . . . . 22
         *a. Taped Statements of Donald Kluver* . . . . . . . . . . . . 22
         *b. Donald Kluver's Grand Jury Testimony* . . . . . . . . . 35
         *c. Other impeachment of Kluver's deposition* . . . . . . . 42
   *B. The Government's Motion To Reconsider* . . . . . . . . . . . . . . . . . 45
      *1. Standard for reconsideration of an interlocutory order* . . . . . 48
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

## I.  INTRODUCTION

In this civil case, the United States (the Government) brings suit against the defendants Russell T. Hawley and Hawley Insurance, Inc. (collectively Hawley), alleging liability under the False Claims Act and Iowa common law fraud.  Before me at this time are the Defendants' Motion In Limine (docket no. 103) (Hawley's Second Motion in Limine) and the United States' Motion In Limine To Reconsider The Admissibility Of Evidence Of Donald Kluver's Plea Agreement (docket no. 104) (the Government's Motion to Reconsider).

### A.  Factual Background

The Government alleges that Hawley engaged in unlawful conduct that allowed ineligible farmers to obtain and make claims against Multi-Peril Crop Insurance (MPCI) policies that were sold by Hawley, issued by North Central Crop Insurance (NCCI), and reinsured by the Federal Crop Insurance Corporation (FCIC), for a plot of crop land in South Dakota.  In my Memorandum Opinion And Order Entering Summary Judgment *Sua Sponte* On Remaining Claims And Reaffirming Summary Judgment On Count One (docket no. 51), I made the following findings of fact:

> The factual background to this action is set forth in some detail in the court's April 3, 2008, ruling on the parties' cross motions for summary judgment.  *See United States v. Hawley*, 544 F. Supp. 2d 787, 791-94 (N.D. Iowa 2008) (Hawley I).
>
> For present purposes, suffice it to say that the government alleges that Hawley knew that Ed Marshall owned the crop land in question, that Mark Hoffman had rented the

land from Ed Marshall, and that Donald Kluver was actually farming the land in 2000.

Nevertheless, Hawley submitted to NCCI a crop insurance application for the 2000 crop year in the names of Sydney and Stanley Winquist for an interest in crops on the crop land. The Winquists later made claims against the MPCI policy on which the FCIC ultimately reimbursed NCCI for crop insurance indemnities and paid premium subsidies for the 2000 crop year totaling $145,540. The Winquists and Kluver were later prosecuted for conspiring to make fraudulent crop insurance claims relating to the crop land for crop year 2000. Kluver entered into a plea agreement and the Winquists entered into pretrial diversion agreements.

Similarly, the government alleges that, just before the application deadline for the 2001 crop year, Hawley submitted to NCCI an application for crop insurance for the crop land in the name of, and purportedly signed by, Ed Marshall. The application had been hand-delivered to Hawley by Mark Hoffman, so Hawley had not seen Marshall sign the application. The FCIC eventually made payments for indemnity payments for crop losses claimed by Marshall and paid premium subsidies on the crop land for the 2001 crop year totaling $159,960. Ed Marshall signed a civil settlement agreement with the United States Attorney's Office for the Northern District of Iowa in which he admitted that he had not signed a timely application for crop insurance nor had he instructed anyone to sign such an application on his behalf and pursuant to which he repaid part of the overpayment alleged.

(docket no. 51, 2-3.)

### B. Procedural Background

To provide background on the complicated procedural history in this case, I quote from a prior order:

The government originally brought claims pursuant to 31 U.S.C. § 3729(a)(1), (a)(2), and (a)(3) of the False Claims

Act (FCA), and common-law claims of fraud and payment under mistake of fact. However, the court granted summary judgment in favor of the defendants on **Count One**, the FCA claim pursuant to 31 U.S.C. § 3729(a)(1) alleging "presentation of a false claim," and as to **Count Five**, the common law claim for "payment under mistake of fact," but otherwise denied the defendants' motion for summary judgment. *See id.* Therefore, this matter was scheduled for trial to begin on June 30, 2008, on the following claims: **Count Two**, the "false record or statement" claim, in which the government asserts a claim pursuant to 31 U.S.C. § 3729(a)(2) of the FCA alleging that the defendants knowingly made, used, or caused to be made or used false records or statements in order to get false or fraudulent claims paid or approved by the United States; **Count Three**, the "conspiracy" claim, in which the government asserts a claim pursuant to 31 U.S.C. § 3729(a)(3) of the FCA alleging that the defendants conspired with others to get false or fraudulent claims allowed or paid by the United States in that the defendants entered into an agreement to submit and process false and fraudulent information in order for ineligible individuals to receive indemnities that would ultimately be reimbursed by the United States through the Federal Crop Insurance Corporation (FCIC); and **Count Four**, the "common-law fraud" claim, in which the government alleges that the defendants engaged in common-law fraud by making or using false records and statements or by concealing the true facts surrounding the individuals actually owning the farmland on which MPCI policies were issued and claims were made, knowing that the misrepresentations or concealments were material and knowing and intending that the United States would rely upon them, thereby causing the United States damages.

(docket no. 51, 3-4.)

On June 23, 2008, I issued an extensive Memorandum Opinion And Order Regarding the Parties' Motions In Limine (docket no. 47). I granted the Government's

motion to exclude references to provisions of the FCA that permit the court to award treble damages and civil penalties for each FCA violation found by the jury, and I denied its motion seeking to exclude evidence of reimbursement and payment procedures between the FCIC and NCCI and retention by the United States of insurance premiums pursuant to a Standard Reinsurance Agreement.

Regarding Hawley's motion in limine, I denied Hawley's motion seeking to limit the Government's proof to answers to interrogatories and requests for production made before the close of discovery, including grand jury testimony. I also denied Hawley's motion to bar evidence of Hawley's tax returns and financial condition. I granted Hawley's motion seeking to eliminate references to "experts," but only to the extent that I would use a modified jury instruction regarding experts, and I determined that use of the term "expert" is not prohibited. I granted in part and denied in part Hawley's motion seeking to bar evidence of experts' opinions on various matters. I granted Hawley's motion to exclude evidence that Hawley allegedly forged applicants' signatures in the past, but I denied Hawley's motion to bar evidence that Hawley has admitted accepting forged signatures in the past, without powers of attorney. I granted Hawley's motion to exclude written memoranda of the statements of various witnesses secured by the government, to the extent that they cannot be admitted pursuant to Rule 803(5), but I denied Hawley's motion to the extent that it prohibits use of the memoranda to refresh witnesses' recollections under Rule 612, provided the Government establishes the foundation necessary for such evidence under Rule 612. I granted Hawley's motion to exclude evidence of Hawley's alleged involvement in asset transfers by Mark, Sue and/or Justin Hoffman and their alleged bankruptcy fraud.

Of note for the motions currently before me, I granted Hawley's motion to exclude evidence of the farming of the South Dakota crop land in years other than 2000 and 2001

and the farming of other crop land in 1998 and subsequent years, except to the extent that such evidence is limited and offered only to provide the context for the relationship among the actors in this case. I also granted Hawley's motion seeking to exclude the plea agreements of non-party witnesses.

I quote again from a prior order to provide further background on the procedural history of this case:

> On June 27, 2008, I filed a Memorandum Opinion And Order Entering Summary Judgment *Sua Sponte* On Remaining Claims And Reaffirming Summary Judgment On Count One. *See* docket no. 51. In this decision, I held that *Allison Engine Co., Inc. v. United States ex rel. Sanders,* 553 U.S. 662, 662 (2008), foreclosed the government's "false record or statement" claim pursuant to § 3729(a)(2) in **Count Two**, and their "conspiracy" claim pursuant to § 3729(a)(3) in **Count Three**. With regard to **Count Two**, I found that the government failed to prove intent, a key requirement under *Allison Engine,* 553 U.S. at 671-672. The government must prove that "the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'" *Allison Engine*, 553 U.S. at 671 ("Under § 3729(a)(2), a defendant must intend that the Government itself pay the claim."). I also found that the alleged false crop insurance claims were never forwarded to or approved by the government, nor was the payment of the crop insurance claims conditioned on review or approval by the government. Thus, the government failed to show Hawley had intended that the false records or statements would be material to the government's decision to pay or approve the false claim. For those reasons, I granted summary judgment in favor of Hawley on the government's "false claim or statement" claim pursuant to § 3729(a)(2) in **Count Two**.
>
> In **Count Three**, the "conspiracy" claim pursuant to § 3729(a)(3), the government's evidence had established Hawley agreed upon a fraud scheme that caused a private

entity, NCCI, to make payments using money obtained from, or reimbursed by, the government. However, under *Allison Engine,* 553 U.S. at 672, I held such evidence was insufficient, because the government must show that the Hawley intended "to defraud the Government." *Id.* ("[I]t is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government. Instead, it must be shown that the conspirators intended 'to defraud the Government.'"). Thus, I granted summary judgment in favor of Hawley on the government's "conspiracy" claim pursuant to § 3729(a)(3) in **Count Three**.

Finally, with regard to the government's last remaining claim, the common-law "fraud" claim in **Count Four**, I concluded that it also failed as a matter of law for the same reasons I found the FCA claims inadmissible. After reconsidering the record, I determined that Hawley only submitted false records and statements to NCCI, never directly to the government. Thus, although the government could prove that Hawley intended to deceive NCCI, it could not demonstrate that Hawley intended to deceive the government. As a result, I granted summary judgment in favor of Hawley on the government's remaining claim in **Count Four**, and the case was dismissed on June 30, 2008. *See* docket no. 52.

On August 25, 2008, the plaintiff filed a Notice Of Appeal to the United States Court of Appeals for the Eighth Circuit, from my Memorandum Opinion And Order Entering Summary Judgment *Sua Sponte* On Remaining Claims And Reaffirming Summary Judgment On Count One, as well as the Judgment dismissing the case. *See* docket no. 53. On August 23, 2010, the United States Court of Appeals for the Eighth Circuit issued an opinion, finding the record created genuine issues of material fact with regard to **Counts Two, Three**, and **Four**, as to "whether Hawley had reason to expect that the representations set forth in false insurance applications and acreage reports that he signed and submitted would reach the

FCIC and influence the FCIC's decision to reimburse NCCI."
(docket no. 59, p. 16) The Eighth Circuit Court of Appeals
noted that Hawley had extensive experience as a federal crop
insurance adjuster and sales agent, thus, because of such
experience, a jury could find that Hawley had reason to expect
that fraudulent representations would be passed on to the FCIC
by NCCI. Judgment was entered on August 23, 2010,
reversing my earlier decision granting summary judgment on
Hawley's remaining counts. On December 8, 2010, in my
Order Setting Trial, Final Pretrial Conference, And
Requirements For Final Pretrial Order, the new trial date was
scheduled to commence on September 19, 2011.

(docket no. 101, pp. 5-8.)

On May 27, 2011, Hawley filed a Motion For Partial Summary Judgment (docket
no. 88), arguing that the amendments to the FCA, as set forth in FERA, do not apply
retroactively to the present matter because § 3729(a)(1)(B) only applies to claims for
payment made to the government pending on June 7, 2008. Additionally, Hawley
contended that, in any event, retroactive application of FERA would violate the *Ex Post
Facto* clause and his Due Process rights under the United States Constitution. On June 20,
2011, the government filed a Brief In Resistance To Defendants' Motion For Partial
Summary Judgment. (docket no. 93.) In its Brief, the Government argued that the newly
codified 31 U.S.C. § 3729(a)(1)(B) should apply in this case because the Government filed
its claims under the FCA against Hawley prior to June 7, 2008. Furthermore, the
Government asserted that retroactive application of FERA would violate neither the *Ex
Post Facto* clause of the United States Constitution, as this matter is clearly civil, nor
Hawley's Due Process rights, because it would serve Congress's legitimate objective of
recovering funds stolen by fraud.

On August 1, 2011, I issued a Memorandum Opinion And Order Regarding Defendants' Motion For Partial Summary Judgment (docket no. 101). I concluded that "the FERA amendments to the FCA do not apply, because Hawley did not have a 'claim,' or a demand for money to the NCCI pending on or after June 7, 2008" and that application of the FERA amendments here would violate "the *Ex Post Facto* clause of the United States Constitution, because the FCA's statutory scheme is punitive in nature, and, thus, retroactive application of the amendments to the FCA would impose punishment for acts that were not punishable prior to enactment of the amendments." *Id.* at 23. Therefore, I granted Defendants' Motion For Partial Summary judgment and found that the pre-FERA amendment version of the FCA applies in this case.

In anticipation of trial, both Hawley and the Government filed additional Motions in Limine on August 10, 2011. *See* Hawley's Second Motion In Limine (docket no. 103); Government's Motion To Reconsider (docket no. 104). On August 24, 2011, Hawley filed a Resistance to the Government's Motion To Reconsider (docket no. 108). On August 25, 2011, the Government filed its Resistance to Hawley's Second Motion In Limine (docket no. 112). The Government filed its Reply in support of its Motion To Reconsider on August 31, 2011 (docket no. 113), and on September 1, 2011, Hawley filed a Reply in support (docket no. 116).

Trial has been rescheduled to begin on November 7, 2011. (docket no. 106.) I turn next to an analysis of the legal issues presented.

## II. ANALYSIS

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . ." FED. R. EVID. 104. Such preliminary questions may depend upon whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. I find here that a preliminary determination of the admissibility of evidence presented or challenged in the parties' respective motions in limine will likely serve the ends of a fair and expeditious presentation of issues to the jury.

At issue throughout the parties' motions in limine is the alleged irrelevance or prejudicial nature of certain challenged categories of evidence. Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority" and that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> Although relevant, evidence may be excluded if its probative
> value is substantially outweighed by the danger of unfair

> prejudice, confusion of the issues, or misleading the jury, or
> by considerations of undue delay, waste of time, or needless
> presentation of cumulative evidence.

FED. R. EVID. 403. The Eighth Circuit Court of Appeals has explained "prejudice" within

the meaning of Rule 403 as follows:

> Under Rule 403, district courts have broad discretion to assess
> unfair prejudice, and are reversed only for an abuse of
> discretion. *United States v. Henderson*, 416 F.3d 686, 693
> (8th Cir. 2005), *cert. denied*, 546 U.S. 1175 (2006). Rule 403
> "does not offer protection against evidence that is merely
> prejudicial in the sense of being detrimental to a party's case.
> The rule protects against evidence that is unfairly prejudicial,
> that is, if it tends to suggest decision on an improper basis."
> *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub
> nom. Smith v. Wade*, 461 U.S. 30, 103 (1983).

*United States v. Myers*, 503 F.3d 676, 682 (8th Cir. 2007); *accord United States v.

Farrington*, 499 F.3d 854, 858-59 (8th Cir. 2007). The Advisory Committee Notes to

Rule 403 explain that a decision on an "improper basis" is "commonly, though not

necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also

United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United

States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence

was unfairly prejudicial, because it might lead to a decision on an improper basis, where

it revealed grisly or violent behavior that made the defendant appear dangerous). Unfairly

prejudicial evidence has also been described as evidence that is "'so inflammatory on [its]

face as to divert the jury's attention from the material issues in the trial.'" *United States

v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d

1429, 1433 (8th Cir. 1995)).

The Advisory Committee Notes to Rule 403 also explain that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction. FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir. 2000) (finding that relevance of evidence was not outweighed by any potential prejudice within the meaning of either Rule 404(b) or Rule 403 where the evidence was used for a limited purpose and the district court gave a limiting instruction).

Rule 403 also permits exclusion of relevant evidence on the basis of its potential for confusion of the issues. FED. R. EVID. 403. The Eighth Circuit Court of Appeals has explained, "'Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.'" *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995) (quoting *United States v. Dennis*, 625 F.2d 782, 796-97 (8th Cir. 1980)).

### A.  Hawley's Second Motion In Limine

### 1.    Timothy Eischeid's testimony

Hawley seeks to exclude Timothy Eischeid's testimony about Hawley's participation in an alleged farm fraud scheme in 1998 on the same crop land at issue in this case. Hawley first contends that Eischeid's testimony is irrelevant, as it does not relate to the Government's allegations in this case regarding Hawley's actions in 2000-2001. Second, Hawley asserts that Eischeid's testimony is inadmissible under Rule 404(b) because it suggests that Hawley, in 2000-2001, acted in conformity with his conduct in the alleged 1998 scheme. Third, Hawley argues that Eischeid's testimony should be excluded under Rule 403 because it would cause confusion and delay in the trial, by introducing evidence of a farm fraud scheme that occurred two years before the relevant events in this case. Fourth and finally, Hawley argues that Eischeid's testimony is barred by my prior

Memorandum Opinion And Order Regarding The Parties' Motions In Limine, in which I determined:

> That part of the defendants' motion seeking to exclude evidence of the farming of the South Dakota crop land in years other than 2000 and 2001 and the farming of other crop land in 1998 and subsequent years will be granted, *except to the extent that such evidence is limited and offered only to provide the context for the relationship among the actors in this case.*

(docket no. 47, p. 64.) Hawley asserts that Eischeid's testimony about the 1998 scheme does not relate to the relationship among the actors in this case. Therefore, Hawley contends that Eischeid's testimony should be completely excluded.

The Government concedes that "Eischeid does not have any knowledge regarding the allegations in the Amended Complaint that Defendants committed fraud and violated the False Claims Act in crop year 2000 and 2001." Government's Resistance at 34 (docket no. 112). Nevertheless, the Government maintains that Eischeid's testimony is relevant and admissible under Rule 404(b) to show Hawley's plan, preparation, knowledge, absence of mistake, and intent in this case:

> To show Defendants' preparation, plan, knowledge, intent, and absence of mistake of fact, the United States intends to introduce the following evidence regarding crop year 1998: (i) testimony by Mark Hoffman demonstrating Hawley's knowledge of the sham arrangement; and (ii) testimony by Eischeid that Russell Hawley never discussed any of the documents with him prior to their submission and that Eischeid did not sign many of the crop insurance documents that Hawley Insurance Inc. submitted in his name.

Government's Resistance at 34 (docket no. 112). The Government argues that courts, in fraud cases like this, frequently permit evidence of other similar fraud schemes to prove intent, plan, and absence of mistake. The Government asserts that Hawley's role in the

1998 scheme was nearly identical to his role in the alleged scheme in 2000-2001 at issue here:

> In both instances, the sham arrangement was established to circumvent government subsidy payment limitations. In both cases, Russell Hawley signed and submitted insurance documents on the name of the sham operator without even discussing those documents with that individual. Finally, in both cases, Hawley either knew or acted in reckless disregard or deliberate ignorance of the fact that neither Tim Eischeid, Mike Hoffman, nor the Winquist brothers were eligible under the federal crop insurance.

*Id.* at 37. The Government likewise asserts that sufficient evidence exists to prove the 1998 scheme and provides the following evidence in support:

> First, Mark Hoffman will testify at trial regarding the facts and circumstances leading to the 1998 crop insurance fraud. Hoffman has already accepted responsibility for: (i) causing multi-peril crop insurance applications to be submitted in Eischeid's name even though Hoffman was the true owner of the crop; (ii) submitting or causing to be submitted acreage reports which falsely certified that Tim Eischeid, rather than Mark Hoffman, had a 100 percent ownership interest in the soybean crop; and (iii) submitting or causing to be submitted Production Worksheets which falsely claimed that Eischeid had a 100 percent interest in the crop losses on the South Dakota crop land in order to obtain crop insurance payments in the amount of $50,748.00. *See* Exhibit K (Hoffman Plea Agreement).
>
> Second, Tim Eischeid will testify at trial regarding his role in the fraud. Eischeid has already accepted responsibility for the facts and circumstances leading to the 1998 crop insurance fraud. Specifically, Eische[i]d signed a pre-trial diversion agreement in which he acknowledged that:
>
> > Eische[i]d, along with Mike Hoffman [brother of Mark Hoffman], entered into a written

> agreement regarding the farming of
> approximately 4,500 acreas of farm land in
> Tripp County, SD, with Mark Hoffman. This
> agreement was an artifice and scheme to defraud
> the United States Department of Agriculture
> [herein USDA] by Mark Hoffman. The scheme's
> purpose was to fraudulently obtain USDA farm
> program benefits and federally reinsured
> multi-peril Crop Insurance [MPCI].

Government's Resistance at 39-40 (docket no. 112) (quoting Eischeid Pre-Trial Diversion Agreement, Government's Exhibit H). As proof of Hawley's participation, the Government asserts, "Finally, Defendant Hawley's role in the scheme is confirmed by the fact that the fraudulent applications and acreage reports were signed by Russell Hawley and submitted by Hawley Insurance, Inc. *See* Exhibits L and M." *Id.* at 40. Additionally, the Government maintains that the high probative value of the 1998 scheme for showing Hawley's plan and intent in this case outweighs the prejudicial effect of introducing evidence of the 1998 events. In response to Hawley's argument that my June 23, 2008, Memorandum Opinion And Order Regarding The Parties' Motions In Limine bars Eischeid's and Mark Hoffman's testimony about farming the South Dakota land prior to 2000, the Government requests, "[t]o the extent that this Order excludes testimony by Mark Hoffman and Timothy Eischeid otherwise admissible under Rule 404(b)," that I reconsider my prior ruling. *See id.* at 34 n.7.

As explained above, Hawley moves only to exclude Eischeid's testimony. Nevertheless, because the Government has asked me to reconsider my prior order, to the extent that it bars both Eischeid's and Mark Hoffman's testimony regarding the alleged 1998 scheme, I will consider here the broader question of whether Eischeid and Hoffman may testify about the 1998 scheme.

I agree with Hawley that my prior Memorandum Opinion And Order Regarding The Parties' Motions in Limine excludes evidence regarding the 1998 scheme, as it bars "evidence of the farming of the South Dakota crop land in years other than 2000 and 2001 . . . *except to the extent that such evidence is limited and offered only to provide the context for the relationship among the actors in this case* . . . ." Memorandum Opinion And Order at 49-50 (docket no. 47) (citing *United States v. Fleck*, 413 F.3d 883, 890 (8th Cir. 2005) (evidence is *res gestae* evidence if it shows the "context" of the charged offense)). Eischeid's and Hoffman's testimony about the 1998 scheme would not "provide the context for the relationship among the actors in this case," but would rather explain a completely separate scheme that occurred two years earlier. Therefore, evidence of the 1998 scheme is properly characterized as "other acts," as opposed to *res gestae,* evidence and is barred by my prior order.

Additionally, I find that the Government has waived any argument to the contrary. The Government did not respond to Hawley's motion in 2008 to exclude evidence of "the farming of the subject farmland (the South Dakota farmland) in years other than 2000 and 2001." *See* Hawley's First Motion In Limine at 13 (docket no. 34-2). I noted the Government's failure to respond in my Memorandum Opinion And Order Regarding the Parties' Motions in Limine: "The government makes no argument, however, concerning admissibility of evidence concerning the farming of the South Dakota crop land in years other than 2000 and 2001 or the farming of any other crop land." Memorandum Opinion And Order at 49 (docket no. 47). At the time the Government submitted its Resistance on June 6, 2008, it certainly was on notice of the existence of the 1998 scheme and its potential evidentiary value to the Government's case against Hawley. This is especially true because the same Assistant United States Attorney to submit the Government's Resistance on June 6, 2008, entered into the Pre-Trial Diversion Agreement with Timothy

Eischeid on January 24, 2003, *see* Government's Exhibit H (docket no. 112-1 at 122), and the plea agreement with Mark Hoffman on January 20, 2005, *see* Government's Exhibit K (docket no 112-1 at 155). Moreover, the Government offers no explanation now as to why I should reconsider my prior order. Therefore, I find that the Government has waived any argument that Hoffman's and Eischeid's testimony about the 1998 scheme is admissible.

Even if I were to reconsider my prior order, I would nonetheless arrive at the same result: evidence of the 1998 scheme is inadmissible under Rule 404(b). "Whether Rule 404(b) prohibits the admission of a particular piece of evidence depends . . . on the purpose for which it is offered." *United States v. Maxwell*, 643 F.3d 1096, 1100 (8th Cir. 2011) (citing *Huddleston v. United States*, 485 U.S. 681, 687 (1988)). Rule 404(b) instructs:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

FED. R. EVID. 404(b). Rule 404(b) affords district courts "broad discretion" in evaluating admissibility of other acts for "other purposes." *See United States v. Jewell*, 614 F.3d 911, 922 (8th Cir. 2010). The Eighth Circuit Court of Appeals "characterizes Rule 404(b) as 'a rule of inclusion rather than exclusion.'" *United States v. Turner*, 583 F.3d 1062, 1065 (8th Cir. 2009) (quoting *United States v. Benitez*, 531 F.3d 711, 716 (8th Cir. 2008)). Nevertheless, evidence of other acts is only admissible for "other purposes" under Rule 404(b) if it is "(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher

in probative value than in prejudicial effect." *See United States v. Allen*, 630 F.3d 762, 764 (8th Cir. 2011) (quoting *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005), *cert. denied*, 546 U.S. 1130 (2006)).

Here, I agree with the Government that Hawley's intent is certainly material to the False Claims Act and common law fraud allegations against him. Moreover, the alleged 1998 scheme is sufficiently similar in kind to the alleged 2000-2001 scheme, as it took place on the same land, and it appears that only the cast of characters changed in 2000-2001, while the methods of defrauding the USDA generally remained the same. The 1998 scheme is also not overly remote in time, as it took place only two years before the events at issue in this case. Therefore, if supported by sufficient evidence and higher in probative value than in prejudicial effect, Hawley's participation in a prior scheme in 1998 on the same crop land would be relevant and admissible to prove Hawley's preparation, plan, knowledge, intent, and absence of mistake in this case.

Nonetheless, while evidence of the 1998 scheme may meet the first two prongs of the four-part test for admissibility of other acts evidence under Rule 404(b), it fails the latter two. To begin, it is not supported by sufficient evidence. The Government is certainly correct that, in fraud cases such as this one, courts frequently admit prior similar uncharged fraudulent conduct "to show the defendant's intent to commit the charged fraud." *See, e.g., United States v. Sparkman*, 500 F.3d 678, 683 (8th Cir. 2007) (affirming district court's admission, where the defendant was charged with burning vehicles and an office building to defraud his insurer, of a witness's testimony that the defendant had told him that he had run a truck into a pond and reported it as stolen to his insurance company, "to show the defendant's intent to commit the charged fraud"); *accord Jewell*, 614 F.3d at 922 (affirming district court's admission, in an aiding and abetting tax evasion case, of evidence of another tax evasion scheme involving the defendant to show

intent under Rule 404(b)); *United States v. Ali*, 616 F.3d 745, 752-53 (8th Cir. 2010) (affirming district court's admission, in an aiding and assisting in false tax returns case, of the testimony of four witnesses "that [the defendant] either provided a dependent for them or suggested that they find a dependent to claim," as prior acts evidence under Rule 404(b) to show intent); *United States v. Griffin*, 579 F.2d 1104, 1109 (8th Cir. 1978) (affirming district court's admission, in a loan fraud case, of "similar transactions which involved land deals in which [the defendants] were involved, where loan proceeds were used in whole or in part to buy land in which [the defendants] had an interest and where deception and concealment were involved."). In all these cases, however, sufficient evidence existed to show the defendants' participation in the uncharged fraudulent conduct.

Here, while the Government has firmly established Eischeid's and Hoffman's roles in the 1998 scheme, it simply has not provided sufficient evidence of any fraudulent conduct on Hawley's part. The Government's evidence of Hawley's "part of the scheme" is thin: he "signed and submitted crop insurance documents in the name of Timothy Eischeid even though Eischied [*sic*] did not have an insurable interest in the crop." *See* Government's Resistance at 33 (docket no. 112). The fact that Hawley signed and submitted crop insurance documents regarding Timothy Eischeid does not show that Hawley had any reason to know of the fraudulent arrangement between Mark Hoffman and Timothy Eischeid in 1998, much less that Hawley intended to defraud the United States in 1998. The Government argues that Mark Hoffman's testimony will "demonstrat[e] Hawley's knowledge of the sham arrangement" in 1998 and that Eischeid will testify that "Hawley never discussed any of the documents with him prior to their submission and that Eischeid did not sign many of the crop insurance documents that Hawley Insurance Inc. submitted in his name." *See* Government's Resistance at 34 (docket no. 112). However, the Government directs me to no deposition or other evidence to support its bald assertion

that Mark Hoffman's testimony will show Hawley's "knowledge of the sham arrangement." *See id.* Additionally, Eischeid's testimony that Hawley failed to discuss crop insurance documents with him and that Eischeid did not sign many of these documents, without more, does little to establish Hawley's fraudulent conduct. Rather, it appears simply to reinforce Mark Hoffman's admissions in his plea agreement that he was responsible for causing crop insurance applications to be falsely submitted in Eischeid's name. *See* Government's Resistance at 39 (docket no. 112); Government's Exhibit K (docket no. 112-1 at 150). Therefore, as the Government's evidence stands now, it is not sufficient to establish Hawley's fraudulent conduct in 1998.

For the same reasons, evidence of the 1998 scheme is not higher in probative value than prejudicial effect. In making this determination, I am mindful that admissibility of evidence under Rule 404(b) turns on "the purpose for which it is offered." *See Maxwell*, 643 F.3d at 1100. Here, the Government offers evidence of the 1998 scheme to prove Hawley's "preparation, plan, knowledge, intent, and absence of mistake" in the crop fraud in 2000-2001. *See* Government's Resistance at 34 (docket no. 112). However, the probative value of the 1998 scheme for its purported purposes is low, as the Government has failed to show that Hawley's conduct in 1998 was fraudulent. Furthermore, the prejudicial effect is high because, even with a limiting instruction, Hawley faces the risk that the jury will assume liability in 2000-2001, in conformity with the alleged 1998 scheme.

Additionally, I would also exclude evidence of the 1998 scheme under Rule 403 because it would confuse the issues and unnecessarily delay the trial. *See* FED. R. EVID. 403; *see also Huddleston*, 485 U.S. at 691 (evidence permitted under Rule 404(b) is subject to Rule 403). To permit the Government to attempt to prove Hawley's participation in the 1998 scheme would run a high risk of confusing the jury as to what

allegations are actually at stake in the trial. *See Firemen's Fund Ins. Co.*, 63 F.3d at 758 ("Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues."). Moreover, a mini-trial on Hawley's alleged involvement in the 1998 scheme would unnecessarily delay the adjudication of the real allegations in this case. As discussed above, the probative value of the 1998 scheme to Hawley's plan, preparation, intent, knowledge, and absence of mistake in this case is low, and it is substantially outweighed here by the risk of confusion and delay.

Therefore, I exclude evidence of the alleged 1998 scheme, both under my prior order and as inadmissible under Rules 404(b) and 403. Neither Hoffman nor Eischeid may testify about the 1998 scheme. As I noted above, the Government only asserts, but does not offer any proof, that Mark Hoffman will testify to Hawley's knowledge of the 1998 scheme. At trial, the Government may request to make an offer of proof, outside of the presence of the jury, in which it may show the trial court how Hoffman's testimony will demonstrate Hawley's knowledge. The Government may also explain at that time why the trial court should reconsider my 2008 order on evidence of farming the South Dakota crop land before 2000, despite the Government's failure to resist in 2008. At this time, however, lacking sufficient proof from the Government, I grant Hawley's motion to exclude evidence of the 1998 scheme.

Nevertheless, although Hawley requests that I completely bar Eischeid's testimony, I do not have sufficient information to determine whether Eischeid has any relevant information to offer because neither party has provided me with Eischeid's deposition. Therefore, I cannot, based on the evidence before me, completely bar Eischeid's testimony at this time.

Thus, this portion of Hawley's motion is granted, to the extent that evidence of the 1998 crop insurance fraud scheme is not admissible. However, it is denied, to the extent that I cannot, on the facts before me, completely bar Eischeid's testimony.

### 2. *Statements of Donald Kluver*

Donald Kluver, one of the Government's witnesses who was involved in the alleged 2000 crop scam at issue in this case, died on April 1, 2009. The Government plans to offer Kluver's October 24, 2007, deposition during its case-in-chief under Rule 804. *See* Government's Resistance at 23 (docket no. 112). Hawley has not moved to exclude Kluver's deposition, but Hawley does argue that several other out-of-court statements made by Kluver are inadmissible.

### a. *Taped Statements of Donald Kluver*

Hawley moves to exclude audiotapes of the Government's interviews on September 15, 2004, and February 3, 2005, with Donald Kluver. Hawley asserts that Kluver's taped statements, including his recitation of statements made by Hawley, are inadmissible hearsay and, furthermore, should be excluded under Rule 403 as unduly prejudicial, as the jury could assume that "the tapes are authoritative, when in reality they were conducted ex parte, not under oath, and without the opportunity for Hawley to cross-examine Mr. Kluver." Hawley's Second Motion In Limine at 12 (docket no. 103-1).

The Government responds that it does intend to introduce a portion of Kluver's September 15, 2004, taped statements, where Kluver discusses whether Russell Hawley knew about who was actually farming the South Dakota land in 2000. At several points during his taped statements, Kluver indicates that, when he and Russell Hawley visited the crop land in the summer of 2000, Kluver attempted to tell Russell Hawley about who was farming the South Dakota land, but Hawley responded, "I don't even want to know about it," or "Man, I don't fucking want to hear it." *See* Government's Exhibit A, Transcript

of September 15, 2004, Tape Recorded Interview of Don Kluver at 9:13-17 (docket no. 112-1 at 8). The Government argues that there is no double hearsay problem with Kluver's statements. First, the Government asserts that Hawley's statement, as recited by Kluver, is admissible under Rule 801(d)(2)(A) as an admission by a party opponent against both Russell Hawley and Hawley Insurance, Inc., as Russell Hawley was a representative authorized to speak on behalf of Hawley Insurance, Inc.

Second, the Government argues that Kluver's statements in his September 15, 2004, taped interview are admissible, as substantive evidence, as a recorded recollection. The Government asserts that Kluver's deposition laid the foundational requirements for admission under Rule 803(5). Alternatively, the Government contends that Kluver's September 15, 2004, taped statements are admissible as substantive evidence under Rule 807, the residual exception for hearsay. The Government argues that Kluver's September 15, 2004, taped statements possess sufficient guarantees of trustworthiness because they are consistent with his statements a week later before the grand jury, where he also indicated that Russell Hawley had told him he did not want to know about who was farming the South Dakota land. The Government also highlights that Kluver's taped statements are consistent with his February 3, 2005, taped interview, where Kluver apparently also indicated that Russell Hawley told him he did not want to know about what was happening on the South Dakota crop land.◻[1] Moreover, the Government argues that because Russell Hawley and Kluver were good friends, Kluver's taped statements are

---

[1] The Government does not provide a transcript of Kluver's February 3, 2005, taped interview, and instead points to a February 3, 2005, email from Bryan Stocking, a Farm Services Agency agent, to Government counsel, where he summarized what Kluver said in the interview. *See* Government's Exhibit C, February 3, 2005, Email from Bryan Stocking (docket no. 112-1).

"inherently reliable." Additionally, the Government highlights that Hawley himself admitted to going to the South Dakota crop land, thereby confirming the factual circumstances of Kluver's account of their trip there. The Government also argues that because Hawley had an opportunity to cross-examine Kluver about his September 15, 2004, taped statements during the October 2007 deposition, any concerns about the trustworthiness of Kluver's statements are substantially diminished. The Government asserts that the other requirements for admission under Rule 807—materiality, probative importance, the interests of justice and the purposes of the Federal Rules of Evidence, and notice—are also met here. The Government also asserts that Kluver's September 15, 2004, taped statements are admissible under Rule 806 to impeach Kluver's October 24, 2007, deposition, where Kluver indicated that Hawley did not know about the crop fraud and where Kluver stated that he did not recall Hawley telling him that he did not want to know about who was farming the land.

In response to Hawley's argument that Kluver's taped statements, even if admissible under a hearsay exception, should be excluded as unduly prejudicial, the Government maintains that the probative value of Kluver's September 15, 2004, taped statements is not substantially outweighed by their prejudicial effect. In support of its argument, the Government highlights that Kluver's taped statements prove Hawley's knowledge or deliberate ignorance of the scam on the crop land in 2000, as Kluver, in his taped statements on September 15, 2004, quoted Hawley as telling him, "I don't even want to know about it." Government's Resistance at 5 (docket no. 112). Therefore, the

Government argues that Kluver's statements are highly probative to a material issue in this case.◻[2]

In reply, Hawley contends that Kluver's September 15, 2004, taped statements do not meet Rule 803(5)'s requirements: first, because they were not made while Kluver's knowledge was still fresh in his mind, but rather over four years after Hawley allegedly told Kluver, "I don't even want to know about it;" and, second, because Kluver never indicated in his deposition that his statements in the September 15, 2004, interview accurately reflected his knowledge at the time. Hawley also argues that Kluver's September 15, 2004, taped statements do not satisfy the requirements of Rule 807 because they are not sufficiently trustworthy. Next, Hawley contends that Kluver's September 15, 2004, taped statements should not be admitted under Rule 806 to impeach his deposition because, at most, they indicate that Hawley did not want to know about the crop scam. Therefore, Hawley argues, Kluver's September 15, 2004, taped statements are not inconsistent with Kluver's deposition testimony that Hawley did not know about the scam or Kluver's inability to recall his taped statements. Finally, Hawley asserts that the taped statements, even if otherwise admissible, should be excluded under Rule 403.

Because the Government does not argue that Kluver's taped statements on February 3, 2005, are admissible as substantive evidence, Hawley's motion as to the February 3, 2005, audiotape is granted, to the extent that the Government may not offer the February

---

[2] Hawley argues for the exclusion of both Kluver's September 15, 2004, and February 3, 2005, audiotaped statements. The Government does not indicate that it intends to offer Kluver's statements made in the February 3, 2005, interview as substantive evidence and does not argue that his February 3, 2005, statements are admissible as substantive evidence.

3, 2005, audiotape as substantive evidence. Therefore, my analysis will only consider Kluver's September 15, 2004, taped statements.

Hearsay is "a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." FED. R. EVID. 805. There are two layers of out-of-court statements in Kluver's audiotaped interview: Hawley's statement, recited by Kluver, and Kluver's own statement. Both are offered for the truth of the matter asserted: to show that when Kluver tried to tell Hawley about who was truly farming the crop land, Hawley told him, "I don't want to hear about it."

I first address the admissibility of Hawley's statement, as recited by Kluver, in his September 15, 2004, taped interview. Rule 801(d)(2) provides:

> A statement is not hearsay if . . . The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

FED. R. EVID. 801(d)(2). If the Government offers any statement made by Russell Hawley against him, that statement is an admission by a party-opponent and therefore not hearsay. *See* FED. R. EVID. 801(d)(2)(D). Thus, Hawley's taped statement, as recited by Kluver in his September 15, 2004, interview, is admissible against Hawley. I likewise find that Hawley's statement is admissible as an admission by a party-opponent against Hawley Insurance, Inc. because Hawley spoke as an agent "concerning a matter within the scope of [his] agency or employment, made during the existence of the relationship." *See id.* Hawley founded Hawley Insurance, Inc. in 1994, *see United States v. Hawley*, 544 F. Supp. 2d 787, 793 (N.D. Iowa 2008), and he acted as an agent for Hawley Insurance, Inc., as demonstrated by his signature authorizing insurance agreements on behalf of Hawley Insurance, Inc. *See, e.g.*, Stanley Winquist Acreage Report, Appendix to Government's Motion For Summary Judgment at 26 (docket no. 16-3). Hawley's alleged statement, that he did not want to know about who was farming the South Dakota land, concerned a matter within the scope of his agency relationship with Hawley Insurance, Inc., as Hawley Insurance, Inc. had submitted crop insurance applications for the South Dakota land. Moreover, Hawley allegedly made this statement in 2000, which was "during the existence" of his agency relationship with Hawley Insurance, Inc. Therefore, Hawley's statement is admissible against Hawley Insurance, Inc. as an admission by a party-opponent.

I now evaluate whether Kluver's September 15, 2004, taped statements are admissible as a recorded recollection under Rule 803(5). This case presents the somewhat unusual situation in which the declarant of the recorded recollection is unavailable to testify. Nevertheless, Kluver's unavailability does not preclude the application of 803(5), as the "availability of [the] declarant [is] immaterial" for all Rule 803 exceptions. *See* FED

R. EVID. 803. *But see Parker v. Reda*, 327 F.3d 211, 215 (2d Cir. 2003) ("Evidence of recorded recollection . . . is inadmissible unless a witness, who once had knowledge of what the record contains, testifies."). The Eighth Circuit Court of Appeals has determined that when a declarant is unavailable, a deposition may suffice to lay a foundation for a recorded recollection. *See Newton v. Ryder Transp. Servs., Inc.*, 206 F.3d 772, 773-75 (8th Cir. 2000) (finding officer's accident report admissible as a recorded recollection, based on officer's deposition); *cf. Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1062 (8th Cir. 1995) (affirming district court's decision to allow accountant's deposition, where accountant was unavailable, to be read into evidence under Rule 804(b)(1) to lay the foundation for admission of accountant's notes as a business record under Rule 803(6)). Therefore, Kluver's deposition may be sufficient to qualify his taped statements as a recorded recollection.

Rule 803(5) provides:

> (5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

FED. R. EVID. 803(5). The Advisory Committee Notes to Rule 803(5) are instructive here: "The guarantee of trustworthiness [of a recorded recollection] is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them." *Id.*, Advisory Committee Notes (citation omitted). Rule 803(5) "makes no attempt to spell out a precise method that courts should use for establishing the witness's initial

knowledge or the contemporaneity and accuracy of the record in question, but rather leaves these matters to be 'dealt with as the circumstances of the particular case might indicate.'" *Newton*, 206 F.3d at 774-75 (quoting FED. R. EVID. 803(5), Advisory Committee Notes); *see, e.g.*, *United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir. 1981) (determining that the victim's taped and written statements qualified as recorded recollections where the statements were made "very soon after the events in question," and, although she could not remember the details of the events, she testified at trial that she remembered making the statements and that, at the time of the statements, she remembered what had happened); *United States v. Sollars*, 979 F.2d 1294, 1298 (8th Cir. 1992) (finding that a tape recorded statement qualified as recorded recollection where the witness testified that she remembered making the statement, but not what she had told the government agent, and where she made the statement "only two months after the fire, when her memory was still fresh").

Here, the central flaw preventing Kluver's September 15, 2004, taped statements from qualifying as a recorded recollection is that they were made four years after the events at issue: Kluver's taped statements concern Hawley's alleged comment in 2000 that he did not want to hear about who was farming the South Dakota land. Although the Eighth Circuit Court of Appeals has eschewed any strict test or time limit for "establishing . . . the contemporaneity . . . of the record in question," *see Newton*, 206 F.3d at 774, it has relied heavily on the short passage of time between the events at issue and the recording of a statement in determining that a statement was made while the events were still fresh in the witness's memory. *See, e.g., Riley*, 657 F.2d at 1386 (statements made "very soon after the events in question"); *Sollars*, 979 F.2d at 1298 (statement made "only two months after the fire, when [the witness's] memory was still fresh."). Moreover, the entire reason for the existence of the recorded recollection exception is "the reliability

inherent in a record made while events were still fresh in mind." *See* FED. R. EVID. 803(5), Advisory Committee Notes. Here, I cannot find that Kluver's taped statements, made four years after the events in question, were "still fresh in [his] mind." Even if Kluver's taped statements meet the other requirements to qualify as a recorded recollection—he did indicate in his October 2007 deposition that he had no recollection of what he had said in his September 15, 2004, taped statements regarding Hawley's knowledge of the farming operation, though he made no indication that his taped statements accurately reflected his knowledge—they ultimately fail because they were not made while the events of 2000 were fresh in his mind. Therefore, Kluver's September 15, 2004, taped statements are not admissible as a recorded recollection under Rule 803(5).

Even though the September 15, 2004, taped statements are not admissible under Rule 803(5), I may consider whether they are admissible under Rule 807: "[I]f a statement is inadmissible under a prior hearsay exception, the statement may nonetheless be considered for admission under the catch-all exception." *See United States v. Earles*, 113 F.3d 796, 800 (8th Cir. 1997); *accord United States v. Kessler*, 181 F. Supp. 2d 989, 991 (N.D. Iowa 2002). Nevertheless, in analyzing the admissibility of Kluver's taped statements under Rule 807, I am cognizant that "'Congress intended the residual hearsay exception to be used very rarely and only in exceptional circumstances.'" *United States v. Halk*, 634 F.3d 482, 489 (8th Cir. 2011) (quoting *United States v. Dorian*, 803 F.2d 1439, 1443-44 (8th Cir. 1986)). The Eighth Circuit Court of Appeals has explained the requirements for admissibility of evidence under Rule 807, as follows:

> Rule 807 allows for the admission of hearsay "not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness." In total, there are five requirements for admissibility under Rule 807: 1) that the evidence have circumstantial guarantees of trustworthiness,

> 2) that the evidence be offered to prove a material fact, 3) that
> the evidence be more probative on the point offered than any
> other evidence which the proponent can procure through
> reasonable efforts, 4) that the proponent has served prior
> notice to the adverse party in advance of trial, and 5) that
> admission would comport with the general purpose of the rules
> and be consistent with the interests of justice. FED. R. EVID.
> 807.

*United States v. Banks*, 514 F.3d 769, 777 (8th Cir. 2008); *accord United States v. White Bull*, 646 F.3d 1082, 1091 (8th Cir. 2011); *United States v. Peneaux*, 432 F.3d 882, 891 (8th Cir. 2005)). In determining whether a statement "'carrie[s] . . . guarantee[s] of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions,'" *Halk*, 634 F.3d at 489 (quoting *United States v. Renville*, 779 F.2d 430, 439 (8th Cir.1985), courts employ "'a broad totality of the circumstances test.'" *See id.* (quoting *United States v. Shields*, 497 F.3d 789, 794 (8th Cir. 2007)) (determining, based on the totality of the circumstances, that out-of-court statements of individuals present at the defendant's arrest were not sufficiently trustworthy to warrant admission under Rule 807 where one declarant later contradicted his statement and where "[a]ll of the proffered statements were made over a year after [the defendant's] arrest and during interviews conducted by defense investigators in anticipation of litigation."); *Shields*, 497 F.3d at 794 (affirming district court's determination that "[the victim's] head shake did not exhibit circumstantial guarantees of trustworthiness, because of [the victim's] high blood alcohol concentration, his statements to his sister and emergency medical technicians that he did not recall how he was injured, doctors' notes stating that he was incoherent, the leading nature of his sister-in-law's question, and the ambiguous nature of his head gesture").

Kluver's taped statements in his September 15, 2004, interview, regarding Hawley's knowledge of who was farming the South Dakota crop land, do not "carr[y] . . .

guarantee[s] of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions.'" *See Halk*, 634 F.3d at 489. Again, Kluver did not make his September 15, 2004, taped statements regarding his conversation with Hawley about the crop land until four years after the conversation occurred. I am not convinced by the Government's argument that Kluver's statements are "inherently reliable" because Hawley and Kluver were good friends. To the contrary, Kluver made his September 15, 2004, taped statements while he was facing criminal charges and shortly before he entered into a plea agreement with the United States on October 7, 2004, indicating a motivation to provide helpful information to the Government. Moreover, although Kluver's September 15, 2004, taped statements that Hawley told him, "I don't even want to know about it," are consistent with his grand jury testimony and apparently also with his interview with the Government on February 3, 2005, Kluver called into question the trustworthiness of his September 15, 2004, statements in his October 2007 deposition:

> Q: Okay. Did you ever discuss the 2000 deal in South Dakota with Russ Hawley?
> A: No, I just told him we was gonna -- Syd and Stan was gonna be up there.
> Q: Did you try to tell him one day on the trip up there?
> A: Well, I mentioned something, and he goes, well -- I didn't mention anything. I goes -- we was up there, and I think I said something to you guys one time, just to get the hell out of your office up there. But he didn't -- he didn't know anything about it.
> Q: Did he ever tell you he didn't want to know about it?
> A: Well, I think later that summer, maybe at one time, we was -- I don't remember. I don't even recall.

Government's Exhibit D, Deposition Transcript of October 24, 2007, Deposition of Don Kluver at 18:17-19:8 (docket no. 112-1 at 58). Finally, I find unpersuasive the Government's argument that Hawley had a chance to cross-examine Kluver on his

September 15, 2004, taped statements and thereby reduced any concerns about untrustworthiness. The Government is certainly correct that the Eighth Circuit Court of Appeals has found, in evaluating a statement's trustworthiness under Rule 807, that the fact that the declarant "testified at trial and was subject to cross-examination 'vitiates the main concern of the hearsay rule'" because "[t]he jury was able to weigh [the declarant's] statements and accord them whatever weight they deemed appropriate." *Peneaux*, 432 F.3d at 892 (quoting *Renville*, 779 F.2d at 440). Here, Hawley's counsel was able to cross-examine Kluver about his September 15, 2004, taped statements during the October 2007 deposition. Nevertheless, Kluver is unavailable to testify at trial. Cross-examination during an out-of-court deposition does less to "vitiate[] the main concern of the hearsay rule" than live testimony before a jury, where a jury can weigh the credibility of the witness's in-court statements in person, versus his out-of-court statements. For all these reasons, I find that Kluver's September 15, 2004, taped statements lack "circumstantial guarantees of trustworthiness" and therefore do not qualify for admission under Rule 807.

Therefore, I find that Kluver's September 15, 2004, taped statements are not admissible as substantive evidence. Even though one layer of hearsay has been resolved, as Hawley's statement is admissible as an admission by a party-opponent, the second layer of hearsay persists, as Kluver's taped statements themselves are inadmissible hearsay.

Nevertheless, Kluver's out-of-court statements, including his September 15, 2004, interview, are admissible to impeach his credibility in his deposition testimony. Rule 806 broadly authorizes attacking and supporting the credibility of a hearsay declarant:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.

> Evidence of a statement or conduct by the declarant at any
> time, inconsistent with the declarant's hearsay statement, is not
> subject to any requirement that the declarant may have been
> afforded an opportunity to deny or explain.  If the party
> against whom a hearsay statement has been admitted calls the
> declarant as a witness, the party is entitled to examine the
> declarant on the statement as if under cross-examination.

FED. R. EVID. 806.  Here, Kluver's October 24, 2007 deposition, admissible under Rule

804(b)(1) as former testimony, comes within Rule 806 as "a hearsay statement . . . [that]

has been admitted in evidence."  *See id.*  Therefore, "the credibility of [Kluver] may be

attacked . . . by any evidence which would be admissible for those purposes if [Kluver]

had testified as a witness."  *See id.*

In Kluver's deposition, he stated that he did not discuss the farming arrangement

in South Dakota with Hawley and that Hawley "maybe" told Kluver he did not want to

know about it, though Kluver then determined that he could not recall what happened.  *See*

Kluver Deposition at 18:17-19:8 (docket no. 112-1 at 58).  Kluver's September 15, 2004,

taped statements, where he indicated that he started to tell Hawley about the crop farming

arrangement, but that Hawley told Kluver that he did not want to know, are therefore

inconsistent with his deposition testimony.  Thus, the September 15, 2004, taped

statements, to the extent they are inconsistent with his deposition testimony, are

inadmissible to impeach his credibility in his deposition testimony.

I find unconvincing Hawley's contention that the tape should be excluded under

Rule 403 for the risk of undue prejudice and confusion of the issues.  Hawley argues that

admitting the tapes would "suggest[] that the tapes are authoritative, when in reality they

were conducted ex parte, not under oath, and without the opportunity for Hawley to cross-

examine Mr. Kluver."  *See* Hawley's Second Motion In Limine at 12 (docket no. 103-1).

However, the Federal Rules of Evidence do not require, as a condition for the admission

of a prior inconsistent statement, that the opposing party had the opportunity to cross-examine the declarant or that the statement was made under oath. *See* FED. R. EVID 613, 806. Thus, admission of Kluver's taped statements is no more prejudicial or confusing than any other prior inconsistent statement. I therefore find that Kluver's September 15, 2004, taped statements are admissible to impeach his deposition. I note, however, that my ruling here does not give the Government carte blanche to admit the entire taped interview; it is only admissible to the extent it impeaches Kluver's credibility in his deposition.

Therefore, this portion of Hawley's motion in limine is granted, except to the extent that the Government can introduce evidence of Kluver's September 15, 2004, taped statements to impeach his credibility in his deposition testimony.◻[3]

### b.      Donald Kluver's Grand Jury Testimony

Hawley also moves to bar the admission of Kluver's grand jury testimony on September 22, 2004, and August 27, 2002, as substantive evidence. Hawley recognizes that my prior Memorandum Opinion And Order Regarding The Parties' Motions In Limine permits the use of grand jury testimony for impeachment or to refresh witnesses' recollections. However, Hawley anticipates that the Government will attempt to introduce Kluver's grand jury testimony as substantive evidence. Hawley argues that I should exclude this evidence as inadmissible hearsay and as unduly prejudicial.

---

[3] Although it is unclear whether the Government intends to introduce Kluver's February 3, 2005, taped statements as impeachment evidence, they would be admissible to impeach Kluver's deposition to the same extent as his September 15, 2004, taped statements.

The Government responds that it does intend to introduce as substantive evidence Kluver's grand jury testimony on September 22, 2004,◻[4] regarding his conversation with Hawley in 2000, including Kluver's statement that when he tried to tell Hawley who was really farming the South Dakota land, Hawley told him, "I don't want to hear it." Government's Exhibit B, Don Kluver's Grand Jury Testimony at 38:13-14 (docket no. 112-1 at 36). The Government, similar to its arguments regarding Kluver's taped statements, contends that there is no double hearsay problem with Kluver's grand jury testimony. The Government argues that Hawley's statement, as recited by Kluver, is an admission by a party-opponent. The Government then asserts that Kluver's testimony itself is admissible as substantive evidence under various hearsay exceptions. First, the Government argues that Kluver's grand jury testimony regarding his alleged conversation with Hawley qualifies as a recorded recollection under Rule 803(5), contending that Kluver stated in his deposition that he could no longer remember his conversation with Hawley and that "the clarity and vividness with which Kluver describes the conversation with Hawley demonstrates that the matter was fresh in [his] memory." Government's Resistance at 27 (docket no. 112). Second, the Government argues that Kluver's grand jury testimony is admissible as former testimony under Rule 804(b)(1). The Government asserts that, even though Hawley did not have an opportunity to cross-examine Kluver during his grand jury testimony, Hawley had the opportunity to cross-examine Kluver during his October 2007 deposition about the substance of Kluver's alleged conversation

---

[4] The Government does not argue that Kluver's August 27, 2002, grand jury testimony is admissible as substantive evidence. Therefore, Hawley's motion is granted as to Kluver's August 27, 2002, grand jury testimony, to the extent the Government cannot introduce it as substantive evidence. Nonetheless, the Government may use it to impeach Kluver's deposition testimony, if relevant.

with Hawley in 2000, as reported by Kluver in his September 15, 2004, taped statements. Therefore, the Government contends that because Kluver made basically the same statements in his grand jury testimony as in his September 15, 2004, taped statements, Hawley effectively had the opportunity to cross-examine Kluver about his grand jury testimony. Thus, the Government argues that Kluver's grand jury testimony is admissible under Rule 804(b)(1).

Third, the Government argues that Kluver's grand jury testimony is admissible under Rule 807, citing an Eighth Circuit Court of Appeals case, *United States v. Earles*, 113 F.3d 796 (8th Cir. 1997), in which the court found that grand jury testimony was admissible under Rule 807. The Government argues that Kluver's testimony is trustworthy because one, Kluver was Hawley's close friend and had no motive to implicate him; two, his grand jury testimony is consistent with his statements in his interviews with the Government on September 15, 2004, and February 3, 2005; three, Kluver never recanted his grand jury testimony; and four, because Hawley had the opportunity to cross-examine Kluver regarding the substance of his conversation with Hawley in 2000.[5] Lastly, the

---

[5] The Government includes, in its heading for the section of its Resistance on Kluver's grand jury testimony, that Kluver's testimony is also admissible under Rule 804(b)(3) as an admission against interest: "Kluver's Grand Jury Testimony Is Admissible Under Rules 803(5), 804(b)(1), 804(b)(3), 807, and to Impeach His Deposition Testimony." *See* Government's Resistance at 25 (docket no. 112). However, the Government makes no argument in its actual brief as to why Kluver's grand jury testimony qualifies as an admission against interest. Therefore, I find that the Government has waived this argument by failing to develop it. Even if I were to find that the Government had not waived argument here, Kluver's statement that Hawley told him, "I don't want to hear it," inculpates Hawley, not Kluver. On its face, then, it is not an admission against Kluver's interest.

Government argues that Kluver's grand jury testimony is admissible to impeach his deposition.

Hawley argues in reply that Kluver's grand jury testimony is not admissible under Rule 803(5) because it was made four years after the events in question and because there is no indication that it accurately reflected Kluver's knowledge. Hawley also asserts that Kluver's grand jury testimony is not admissible as former testimony under Rule 804(b)(1) because Hawley did not have the opportunity to cross-examine Kluver during his grand jury testimony, regardless of whether Hawley cross-examined Kluver on his conversation with Hawley in 2000 in his deposition. Finally, Hawley argues that Kluver's grand jury testimony does not satisfy Rule 807's requirements of trustworthiness, as Kluver made his grand jury testimony in hopes of receiving a favorable plea agreement.

I begin by noting that, as with Kluver's taped statements, there are two layers of out-of-court statements in Kluver's grand jury testimony: Hawley's statement, as recited by Kluver, and Kluver's own testimony. Both are offered for the truth of the matter asserted: to show that when Kluver tried to tell Hawley about who was truly farming the crop land, Hawley told him, "I don't want to hear about it." As with the taped statements, I again agree with the Government that Hawley's statement, as recited by Kluver, is admissible as an admission by a party-opponent against Russell Hawley and Hawley Insurance, Inc. *See* FED. R. EVID. 801(d)(2).

Nevertheless, I find that Kluver's testimony itself is inadmissible hearsay—at least as substantive evidence. Kluver's grand jury testimony fails to qualify as a recorded recollection under Rule 803(5) for the same reason that I rejected his September 15, 2004, taped statements as a recorded recollection. Kluver's grand jury testimony, made on September 22, 2004, occurred over four years after his alleged conversation with Hawley

in 2000. Therefore, I cannot find that Kluver's grand jury testimony was made while the 2000 events were "still fresh in [his] memory." *See* FED. R. EVID. 803(5).

Likewise, I reject Kluver's grand jury testimony under Rule 807 for much the same reasons that I rejected his September 15, 2004, taped statements as admissible under Rule 807. Of course, an important distinction between his grand jury testimony and his taped statements is that his grand jury testimony was made under oath, which certainly enhances its trustworthiness. However, examining the "totality of the circumstances," Kluver's grand jury testimony does not "carr[y] . . . guarantee[s] of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions.'" *See Halk*, 634 F.3d at 489. Although the Eighth Circuit Court of Appeals in *Earles* found the admission of grand jury testimony to be proper in that case under the catch-all exception to the hearsay rule, *see Earles*, 113 F.3d at 799-801 (citing *United States v. Carlson*, 547 F.2d 1346, 1354 (8th Cir. 1976) (finding declarant's testimony before the grand jury to be admissible under the catch-all hearsay exception)), the circumstances indicating trustworthiness are lesser in this case. First, here, Kluver did not testify before the grand jury about Hawley's statement until September 22, 2004, four years after the conversation with Hawley allegedly occurred. In contrast, the declarant in *Earles* testified about the events at issue in the case, the burning of a grocery store in January 1989, three times before the grand jury returned its indictment in October 1991. *See id.* at 798; *see also United States v. Earles*, 983 F. Supp. 1236, 1240 (N.D. Iowa 1997). Second, the Eighth Circuit Court of Appeals, in examining the trustworthiness of the grand jury testimony in *Earles*, highlighted that "[the declarant] never recanted his testimony nor did any extrinsic evidence cast doubt on the accuracy of that testimony." *Earles*, 113 F.3d at 800; *accord Carlson*, 547 F.2d at 1354 ("[The declarant] never recanted his grand jury testimony or expressed any belated reservations as to its accuracy."). Here, on the one hand, Kluver's

grand jury testimony that he attempted to tell Hawley who was farming the South Dakota land is consistent with his September 15, 2004, taped statements and apparently also with his February 3, 2005, taped statements. However, Kluver, in his October 2007 deposition, called into question whether he ever tried to tell Hawley about who was truly farming the crop land:

> Q: Okay. Did you ever discuss the 2000 deal in South Dakota with Russ Hawley?
> A: No, I just told him we was gonna -- Syd and Stan was gonna be up there.
> Q: Did you try to tell him one day on the trip up there?
> A: Well, I mentioned something, and he goes, well -- I didn't mention anything. I goes -- we was up there, and I think I said something to you guys one time, just to get the hell out of your office up there. But he didn't -- he didn't know anything about it.

Government's Exhibit D, Deposition Transcript of October 24, 2007, Deposition of Don Kluver at 18:17-19:8 (docket no. 112-1 at 58). Thus, here, in contrast to the declarants in *Earles* and *Carlson*, Kluver, speaking under oath in his deposition, "expressed . . . belated reservations," *see Carlson*, 547 F.2d at 1354, about what he actually communicated to Hawley in 2000. Therefore, despite the consistency of Kluver's grand jury testimony with his two taped interviews and the fact that Kluver was under oath in his grand jury testimony, when I examine the totality of the circumstances here, I do not find "circumstantial guarantees of trustworthiness" sufficient to justify the admission of Kluver's grand jury testimony under Rule 807.

I also find that Kluver's grand jury testimony is not admissible under Rule 804(b)(1), the hearsay exception for former testimony of an unavailable witness:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance

with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

FED. R. EVID. 804(b)(1). The Eighth Circuit Court of Appeals has determined that grand jury testimony is not admissible under Rule 804(b)(1) because there is no opportunity to cross-examine the declarant. *See Earles*, 113 F.3d at 800. Nevertheless, the Government argues that in the "unique circumstances" of this case, Kluver's grand jury testimony should be admitted under Rule 804(b)(1) because Hawley had the opportunity to cross-examine Kluver about the same subject matter—Kluver's alleged conversation with Hawley in 2000—during Kluver's October 2007 deposition. I disagree. The Advisory Committee Notes to the 1972 Proposed Rules indicate that the entire reason for the existence of the Rule 804(b)(1) exception for former testimony is that "both oath and opportunity to cross-examine were *present in fact*." FED. R. EVID. 804(b)(1), Advisory Committee Notes to the 1972 Proposed Rules (emphasis added). Here, the "opportunity to cross-examine" was not "present in fact," as Hawley was not able to cross-examine Kluver during the grand jury proceedings. The mere fact that Hawley had the opportunity to cross-examine Kluver about the alleged 2000 conversation during the deposition is no substitute, especially because, at the time of the deposition, the Government had not yet disclosed Kluver's grand jury testimony. Therefore, Hawley, when cross-examining Kluver during his deposition, had no reason to know that Kluver had made statements about his 2000 conversation with Hawley during his grand jury testimony. For these reasons, Kluver's grand jury testimony is not admissible under Rule 804(b)(1).

Therefore, Kluver's grand jury testimony is inadmissible hearsay, and it is not admissible as substantive evidence. Nevertheless, consistent with my prior Memorandum

41

Opinion And Order Regarding The Parties' Motions In Limine, where I ruled that the Government may use testimony from the grand jury proceedings as impeachment evidence (docket no. 47 at 21), I find here that Kluver's grand jury testimony is admissible as impeachment evidence, to the extent it is inconsistent with his deposition.

Thus, this portion of Hawley's motion in limine is granted, except to the extent that Kluver's grand jury testimony is admissible to impeach his deposition testimony.

### c.    *Other impeachment of Kluver's deposition*

Hawley moves to exclude Bryan Stocking's testimony regarding Kluver's statements in a February 3, 2005, interview with the Government. Bryan Stocking is a Farm Service Agency agent who was present at Kluver's September 15, 2004, and February 3, 2005, interviews. Hawley argues that Bryan Stocking's recitation of Kluver's statements would be inadmissible hearsay. Additionally, Hawley asserts that I should exclude Stocking's recitation of Kluver's statements as unduly prejudicial under Rule 403, because "[p]ermitting the government to introduce statements made by Mr. Kluver in the interview with Mr. Stocking would give the jury the impression that any comments Mr. Kluver made are entitled to complete deference since there was no opportunity to ask him to clarify his statements, qualify them in any way, or test his memory." Hawley's Second Motion In Limine at 10 (docket no. 103-1). Hawley also moves to bar as inadmissible hearsay Bryan Stocking's e-mail memorandum of the February 3, 2005, interview, in which he recounted Kluver's statements.

The Government counters that it does not plan to introduce Stocking's testimony in its case-in-chief. However, the Government anticipates that Hawley will use Kluver's deposition, in which Kluver indicated that he may have not been truthful when speaking with the Government in the past, "to suggest that Kluver invented the substance of his conversation with Russell Hawley in crop year 2000" Government's Resistance at 112.

The Government indicates that, if this occurs, it will use Stocking's testimony as impeachment evidence:

> Mr. Stocking will testify that, on February 3, 2005, Kluver again came into the United States Attorney's Office and reiterated the statement that he made to federal agents on September 15, 2004. Mr. Stocking will also testify that he perceived Kluver's demeanor to be relaxed at both the September 15, 2004 and February 3, 2005 interviews.

Government's Resistance at 31 (docket no. 112). The Government thus argues that there is no hearsay problem, as Stocking's testimony is only offered as impeachment of Kluver's deposition. Furthermore, the Government adds that it does not intend to introduce Stocking's e-mail memorandum of the interview but states that it may use the e-mail memorandum to refresh Stocking's recollection if necessary.

Hawley argues in reply that "[i]t is doubtful that Stocking's observation about Kluver being relaxed has anything to do with whether or not Kluver made up his testimony regarding the . . . conversation he claims to have had with Hawley." Hawley's Reply at 7 (docket no. 116). Hawley also contends that Stocking's testimony "would confuse the jury and would also be cumulative," *see id.*, though Hawley does not explain this assertion.

Hawley also moves to exclude Kluver's testimony in Kluver's bankruptcy proceedings as inadmissible hearsay and as unduly prejudicial, arguing that the jury could assume that Kluver's out-of-court statements are authoritative merely because they occurred in a formal setting. The Government responds that it does not intend to introduce Kluver's bankruptcy testimony during its case in chief, but contends that it is admissible to impeach his deposition.

As I have already noted, under Rule 806, "[w]hen a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked . . . by any evidence which would be admissible for those purposes if declarant had testified as a witness." *See* FED. R. EVID. 806. Kluver's deposition, admissible as former testimony under Rule 804(b)(1), therefore is subject to impeachment. I agree with the Government that Bryan Stocking's testimony, both that Kluver made consistent statements in his two Government interviews and that he appeared relaxed in those interviews, is admissible to impeach Kluver's deposition testimony that he invented his prior statements to the Government. Stocking's e-mail memorandum of the interview may be used to refresh his recollection, as long as the Government establishes the necessary foundational requirements. *See* FED. R. EVID 612.

Regarding Kluver's bankruptcy testimony, neither party has provided me with a transcript. Nevertheless, as long as Kluver's bankruptcy testimony is inconsistent with his deposition, it may be used to impeach Kluver's deposition testimony regarding issues relevant to this case. I reject Hawley's contention that Stocking's testimony and Kluver's bankruptcy testimony should be excluded under Rule 403. As I have explained, the Federal Rules of Evidence do not require, as a condition for admission of a prior inconsistent statement, that the opposing party had the opportunity to cross-examine the declarant. *See* FED. R. EVID 613, 806. Thus, the mere fact that Hawley was not present for Kluver's interviews with the Government or his bankruptcy testimony does not support their exclusion under Rule 403.

Therefore, this portion of Hawley's motion in limine is denied, to the extent that Bryan Stocking may testify regarding Kluver's interviews with the Government for impeachment purposes; his e-mail memorandum may be used to refresh his recollection, provided the Government establishes the necessary foundational requirements; and

Kluver's bankruptcy testimony may be used to impeach his October 24, 2007, deposition regarding issues relevant to this case.

## B. The Government's Motion To Reconsider

The Government moves for reconsideration of my June 23, 2008, Memorandum Opinion And Order Regarding The Parties' Motions In Limine, in which I excluded the plea agreements of several individuals, including Donald Kluver, as inadmissible hearsay (docket no. 47, pp. 60-62). In my Order, I found that Rule 804(b)(3), the exception for a statement against interest, did not apply, because the Government had not made any showing that any of the individuals were unavailable to testify at trial. I also found that Rule 807 did not allow the admission of the plea agreements because they only met some, but not all, of Rule 807's requirements. I determined that the plea agreements likely possessed "the necessary guarantees of trustworthiness, because a person generally will not subject himself or herself to criminal liability unless the statements on which the charges are based are true." *Id.* at 61. I also determined that the plea agreements were offered to prove a material fact—"that the declarants were involved in a fraudulent scheme to obtain crop insurance benefits"—and that the Government had provided sufficient notice to Hawley. Nevertheless, I was not convinced that the plea agreements were more probative than the declarants' live testimony about the crop insurance scheme. Nor was I persuaded that admission of the plea agreements comported with the general purpose of the rules and served the interests of justice, where the declarants could testify live at trial and be subject to cross-examination. Furthermore, I determined that there was a danger of unfair prejudice in admitting the plea agreements, as the jury could assume Hawley's guilt by association upon learning that his associates had pleaded guilty to criminal charges.

The Government now moves for me to reconsider my Order excluding Donald Kluver's plea agreement, as he died in 2009 and is no longer available to testify. The Government states that it "intends to offer Kluver's plea agreement and allocution to prove the material fact that Kluver was involved in the fraudulent scheme with Defendants to obtain crop insurance benefits and knowingly made false statements in furtherance of that scheme." Government's Motion To Reconsider at 4-5 (docket no. 104-1). The Government argues that Kluver's plea agreement and his plea allocution are admissible as a statement against interest under Rule 804(b)(3). Alternatively, the Government asserts that his plea agreement and plea allocution are admissible under the residual exception to the hearsay rule, Rule 807. The Government argues that, because Kluver is now unavailable to testify, my reservations about admitting his plea agreement under Rule 807 have been resolved. The Government contends that Kluver's plea agreement and plea allocution are "among the most probative pieces of evidence available to prove the facts of Kluver's involvement in the fraudulent scheme and his knowing participation in the scheme," now that Kluver cannot testify. Government's Motion To Reconsider at 9 (docket no. 104). Moreover, the Government asserts that admitting Kluver's plea agreement and allocution would serve the interests of justice and the purposes of the rules because they would "provide the jury with key facts regarding Kluver's involvement in the scheme." *Id.* at 10. Finally, the Government adds that Kluver's plea agreement and plea allocution are highly probative for showing his involvement in the crop insurance scheme and thus outweigh any prejudicial effect on Hawley.

Hawley counters that Kluver's plea agreement is not a statement against interest because, in his guilty plea, he implicated others and hoped to gain the Government's favor and a lighter sentence. Hawley also notes that in his deposition, Kluver asserted that, during interviews with the Government, he had given the Government information

46

inculpating others in order to help himself. Hawley argues that, although Kluver never stated that the information contained in his plea agreement was false, the fact that Kluver indicated that he invented information to inculpate others on one occasion casts doubt on his statements in his plea agreement, as well.

Furthermore, Hawley asserts that Kluver's unavailability has not cured all of the defects that I identified in my prior Order, when I determined that Kluver's plea agreement was not admissible under Rule 807. First, Hawley contends that the plea agreement does not have sufficient circumstantial guarantees of trustworthiness, as Kluver was trying to curry favor with the government in hopes of a lighter sentence. Second, Hawley asserts that Kluver's plea agreement is not more probative on the point for which it is offered—to prove Kluver's involvement in the scheme—than other evidence, as the Government took Kluver's deposition and had ample opportunity to question Kluver regarding matters in his plea agreement. Third, Hawley argues that admitting the plea agreement does not serve the interests of justice or the purposes of the rules because admitting the plea agreement would cause unfair prejudice and confusion of the issues. Relatedly, Hawley asserts that, even if I find that the plea agreement is admissible under Rule 804(b)(3) or Rule 807, I should exclude the plea agreement under Rule 403, because the probative value of the plea agreement is substantially outweighed by the danger for unfair prejudice and confusion. Hawley argues that the probative value of the plea agreement is low, as the Government can use Kluver's deposition to show his involvement in the 2000 crop scam. Regarding the risk for unfair prejudice and confusion of the issues, Hawley asserts, "Evidence of the plea agreement would confuse and mislead the jury into believing that because Mr. Kluver pleaded guilty to defrauding the government, then, by association, Hawley must have also done something wrong." Hawley's Resistance at 11 (docket no. 108). Furthermore, Hawley asserts that admission of the plea agreement would confuse the issues, as it

contains information regarding matters unrelated to this case, including Kluver's bankruptcy fraud. Therefore, Hawley argues that the plea agreement should be excluded under Rule 403.

The Government responds that the mere fact that other individuals are mentioned in Kluver's plea does not preclude the applicability of Rule 804(b)(3), as Kluver did not "decrease [his] own exposure to criminal liability or shift blame to other parties." Government's Reply at 2 (docket no. 113). The Government also asserts that Kluver's deposition does not undermine his plea agreement, as he never disputed his plea agreement in his deposition. Furthermore, the Government argues that the probative value of Kluver's plea agreement and allocution is not substantially outweighed by the risk for prejudice and confusion of the issues. The Government asserts that Kluver's plea agreement and allocution are more probative than his deposition because Kluver "was unable because of his poor memory—or unwilling because of his close relationship to Russell Hawley—to provide specific deposition testimony regarding the fraud." Government's Reply at 4 (docket no. 113). The Government also contends that any prejudicial effect of the plea agreement and plea allocution can be cured by a limiting instruction that cautions the jury not to draw conclusions about Hawley's liability on the basis of Kluver's guilty plea. Regarding Hawley's argument that the plea agreement, which discusses Kluver's bankruptcy fraud and other unrelated matters, would confuse the issues, the Government states that it intends to redact portions of the plea agreement that do not relate to the crop insurance fraud.

### 1.     Standard for reconsideration of an interlocutory order

As a preliminary matter, I note that I have authority to reconsider any of my prior interlocutory orders in this case. As I have repeatedly held in prior cases, this authority

derives from both the inherent power of the court to revise and reconsider its interlocutory orders, and from Federal Rule of Civil Procedure 54(b), which provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b); *see also Kirt v. Fashion Bug #3252, Inc.*, 495 F. Supp. 2d 957, 964 (N.D. Iowa 2007); *Doctor John's, Inc. v. City of Sioux City, Iowa*, 467 F. Supp. 2d 925, 931 (N.D. Iowa 2006); *Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 336 F. Supp. 2d 906, 909 (N.D. Iowa 2004) (citing cases); *see also Baldwin v. United States*, No. 09-cv-33 (D. N. Mar. I. Sept. 26, 2011). Therefore, I have the authority to reconsider my Memorandum Opinion And Order Regarding The Parties' Motions In Limine, in which I barred Kluver's plea agreement, in light of the changed circumstance that Donald Kluver died in April 2009.

### 2. *Analysis*

In this instance, however, despite the changed circumstance, I reach the same result as my prior order. Even if Kluver's unavailability qualifies his plea agreement and allocution for admission under hearsay exceptions 804(b)(3) or 807, my concerns about the prejudicial effect of the plea agreement and allocution remain the same. I find that the probative value of Kluver's plea agreement and allocution is "substantially outweighed by the danger of unfair prejudice" to Hawley. *See* FED. R. EVID. 403; *Myers*, 503 F.3d at 682 ("Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion.").

To begin, the Government overstates the probative value of Kluver's plea agreement and allocution to the issues in this case. The Government states that it "intends to offer Kluver's plea agreement and allocution to prove the material fact that Kluver was involved in the fraudulent scheme with Defendants to obtain crop insurance benefits and knowingly made false statements in furtherance of that scheme." Government's Motion To Reconsider at 4-5 (docket no. 104-1). However, an analysis of Kluver's plea agreement and allocution shows that, while they firmly establish Kluver's scheme to apply for crop insurance in the Winquists' names when Kluver himself was farming the South Dakota land, their probative value for showing Kluver's involvement in a fraudulent scheme *with Hawley* is low.

Specifically, the Government cites the following portion of Kluver's plea agreement to support its motion, *see* Government's Motion To Reconsider at 3 (docket no. 104-1):

> 35B. For the Crop year 2000, defendant and others known to the Grand Jury, devised a scheme to fraudulently conceal the true extent of defendant's farming operation to USDA so defendant could collect additional farm program and federal crop benefits he would not otherwise be entitled to.

> 35F. On or about February 24, 2000, in the Northern District of Iowa, defendant and S.W. made, and caused to be made, Multi-Peril Crop Insurance Applications through Hawley Insurance, located in Vail, Iowa, for S.W.1 and S.W.2 to secure insurance coverage of the soybean crop in South Dakota. Defendant knew that S.W.1 and S.W.2 were not eligible to secure coverage because defendant was the true farmer of the South Dakota farming operation.

*Id.* at 3 (quoting Government's Exhibit B, Kluver's Plea Agreement at 12-13 (docket no. 104-3)). Section 35B does not identify which "others known to the Grand Jury[] devised a scheme" with Kluver. Moreover, Section 35F shows that the applications were made

through Hawley Insurance, but it does not establish any fraudulent conduct on Hawley's part. As far as Kluver's allocution before Chief United States Magistrate Judge Paul Zoss, the Government cites, in support of its motion, the section of Kluver's allocution in which he admitted the charges in Count 2 against him, *see* Government's Motion To Reconsider at 4 (docket no. 104-1), which reads as follows:

> The Court: So in other words, the government is claiming it would have to prove beyond a reasonable doubt that on or about December 15, 2000, you knowingly and intentionally submitted this multi-peril crop-insurance production worksheet to the North Central Crop Agency and on that worksheet you claim that SW-1 and SW-2 each had a 50 percent interest in this crop and cropland in South Dakota when you actually owned it all. Do you understand that?
>
> The Defendant: Yes.
>
> The Court: And is that true?
>
> The Defendant: Yes.
>
> The Court: Second thing the government alleges is that you knew these false certifications were material because if you were the true owner of all of the cropland - - excuse me, because you were, in fact, the true owner of all of the cropland and you, in fact, received a benefit of $116,240 in federal reinsured crop insurance benefits as a result of that. Do you understand that?
>
> The Defendant: Yes.
>
> The Court: And is that true?
>
> The Defendant: Yes.
>
> The Court: Third thing the government would have to prove is that this multi-peril crop insurance production worksheet was within the jurisdiction of the Risk Management Agency, the Federal Crop Insurance Corporation, and the United States Department of Agriculture, all of which were agencies of the United States of America. Do you understand that's something the government would have to prove to establish federal jurisdiction?

> The Defendant: Yes.◼[6]
> The Court: And is that true?
> The Defendant: Yes.
> The Court: Miss Fagg, did I correctly explain the elements of Count 2 to the defendant?
> Ms. Fagg: Yes.

Kluver's Plea Allocution at 36-37 (docket no. 104-4). Again, the plea allocution establishes that Kluver submitted applications in the Winquists' names through North Central Crop Insurance (with which Hawley was affiliated), but it does not show any fraudulent conduct on Hawley's part.

Moreover, the probative value of Kluver's plea agreement and allocution is decreased here because there is other, less prejudicial evidence available to the Government to show that Kluver knowingly submitted false crop insurance applications in the Winquists' names through Hawley. "[T]he probative value of an item of evidence is calculated with respect to the other evidence available to prove the same point." *See Clark v. Martinez*, 295 F.3d 809, 813 (8th Cir. 2002) (citing *Old Chief v. United States*, 519 U.S. 172, 184 (1997) ("[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives.")). Kluver's deposition, along with the Government's evidence of the MPCI applications and other documents submitted in the names of Stanley and Sydney Winquist, *see* Appendix to Government's Motion for Summary Judgment at 24-34 (docket no. 16-3, 16-4), provide substantially similar evidence as the plea agreement and allocution. In his deposition, Kluver described the scheme regarding the South Dakota crop land in 2000:

---

[6] I note that whether federal jurisdiction existed for Kluver's criminal prosecution is not relevant to the issues in this case.

Q: Just describe on the record what the deal was with Syd and Stan Winquist for that one year that you farmed in South Dakota. And for the purposes of the record, I'll say that year was 2000.

. . . .

A: I've got to think back. Got Syd and Stan signed up for the program. Let's see. How did that go?

. . . .

Q: Okay. In 2000, you said you'd gotten Stan and Syd to sign up for the program payments.

A: Yeah.

Q: What was the reason for that?

A: The banker told me to.

Q: And what was the banker's name?

A: Good luck.

Q: Okay. What did he tell you then?

A: He just told me that in order to rent that, we should put it in somebody's - - like a hired man's name or something.

Q: And why - -

A: So we can get the government money and then we can farm it.

. . . .

Q: So you went ahead and did it?

A: Yeah. That's how you could get the money loaned.

Q: Who wrote the MPCI insurance and hail insurance for the South Dakota land?

A: MPCI, that's crop insurance?

Q: Yes.

A. Okay. Russ Hawley.

Q: And who wrote the hail insurance on that property?

A: I think I got it through Hawley.

Q: And who carried the MPCI and in whose name was it carried? Carried in your name or the Winquist name?

A: Winquist.

Q: And in whose name was the hail insurance coverage?

A: I think I took out the hail.

. . . .

> Q: Who furnished the crop production information to Hawley
> Insurance Agency or NCCI, the company who wrote the
> policy?
> A: I don't recall if it was Syd or if I helped with it. I don't
> recall.
> Q: Okay. And now - -
> A: That's been a long time ago.
> Q: You're referring to Syd - - Syd Winquist?
> A: Yeah.
> Q: But you were responsible for it; is that correct?
> A: Responsible for what?
> Q: Well, it was your farming operation, correct?
> A: Well, yeah.

Kluver Deposition at 13:2-18:16 (docket no. 112-1). Therefore, calculated against the
other evidence available to the Government to show the same point, the probative value
of Kluver's plea agreement and allocution is low for the issues in this case.

Furthermore, this low probative value is substantially outweighed by the danger of
unfair prejudice to Hawley. *See* FED. R. EVID. 403, Advisory Committee Notes ("'Unfair
prejudice' . . . means an undue tendency to suggest decision on an improper basis . . . ."").
As I determined in my prior Order, "[E]vidence that associates of Russell Hawley have
pleaded guilty to criminal charges stemming from what is alleged to be the same scheme
may invite jurors to find against Hawley because of association, rather than because of
evidence demonstrating Hawley's own involvement in the conduct at issue in the
government's claims." Memorandum Opinion And Order at 62 (docket no. 47). Kluver's
guilty plea, which does little to establish Hawley's fraudulent conduct, runs a high risk of
suggesting Hawley's guilt by association, and thus has an "undue tendency to suggest
decision on an improper basis." *See* FED. R. EVID. 403, Advisory Committee Notes.
Although the Government suggests the use of a limiting instruction, I find that the risk of

unfair prejudice to Hawley, when weighed against the low probative value of the plea agreement and allocution, mitigates towards their total exclusion.

Therefore, the Government's Motion To Reconsider is denied. The Government may not introduce Kluver's plea agreement and allocution at trial.

### III. CONCLUSION

THEREFORE, I

1. **Grant** Hawley's Second Motion In Limine (docket no. 103), to the extent that,

a) The Government may not refer, directly or indirectly, to evidence of the 1998 crop insurance scheme on the South Dakota land. However, at trial, the Government may request to make an offer of proof, outside of the presence of the jury, in which it may show the trial court how Hoffman's testimony will demonstrate Hawley's knowledge of the fraudulent scheme in 1998. The Government may also explain at that time why the trial court should reconsider my 2008 order barring evidence of farming of the South Dakota crop land before 2000, despite the Government's failure to resist in 2008. At this time, however, lacking sufficient proof from the Government, I grant Hawley's motion to exclude evidence of the 1998 crop insurance scheme.

b) The Government may not refer, directly or indirectly, to Kluver's September 15, 2004, or February 3, 2005, taped statements as substantive evidence.

c) The Government may not refer, directly or indirectly, to Kluver's grand jury testimony as substantive evidence.

2. **Deny** Hawley's Second Motion In Limine (docket no. 103), to the extent that,

a) I do not have sufficient information at this time to completely bar Eischeid's testimony, though he may not testify about the 1998 crop insurance scheme.

55

b) The Government may use Kluver's September 15, 2004, and February 3, 2005, taped statements as impeachment evidence.

c) The Government may use Kluver's grand jury testimony as impeachment evidence.

d) The Government may use Bryan Stocking's testimony regarding Kluver's audiotaped interviews to impeach Kluver's deposition. The Government may also use Stocking's e-mail memorandum to refresh his recollection, provided it lays the necessary foundation.

e) The Government may use Kluver's testimony in his bankruptcy proceedings to impeach his deposition, if relevant to this case.

3. **Deny** the Government's Motion To Reconsider (docket no. 104) in its entirety. The Government may not introduce Kluver's plea agreement or allocution.

**IT IS SO ORDERED.**

**DATED** this 13th day of October, 2011.

Mark W. Bennett
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA